## DAVEY *v.* STATE.

### Opinion delivered July 3, 1911.

1. BANKS AND BANKING—RECEIVING DEPOSITS AFTER INSOLVENCY.—An indictment of a bank cashier for knowingly receiving deposits when the bank was insolvent, which alleges that the bank was a corporation and was doing a banking business at a certain place in this State is not defective in failing to charge that such bank was "organized or doing business under the laws of the State of Arkansas," nor in failing to charge that it was not a national bank. (Page 550.)

2. CONTINUANCE—DISCRETION OF COURT.—In a prosecution of a bank cashier for knowingly receiving a deposit when the bank was insolvent, the defendant asked for a continuance to secure the attendance of the president and principal stockholder of the bank, who was more familiar with its business affairs, and the court denied the application at the trial. The State relied upon proof of a deposit made two days before the bank failed, but the court ruled that the evidence did not

make out a case, whereupon the State was allowed to introduce proof of a deposit made nearly a year before the bank's failure. *Held,* in view of the fact that the State changed its point of attack, it was error to deny the application for a continuance; and it was unnecessary for defendant to plead a surprise and renew his motion for continuance. (Page 551.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*Williams & Williams* and *Walker & Walker,* for appellant.

1. The demurrer to the indictment should have been sustained because the act under which the indictment was brought applies to banks organized or doing business under the laws of the State of Arkansas, and the indictment does not allege that the Bank of Siloam was either organized or doing business under the laws of the State of Arkansas. Kirby's Digest, § § 1813, 1814. This is a criminal statute, which must be strictly construed. No case can be brought within its provisions unless it is within both the letter and the spirit of the law. Lewis, Sutherland, Stat. Construction, 456 to 459, and 515, 520 to 525; 38 Ark. 519; 40 Ark. 97; 43 Ark. 413; 59 Ark. 341; 53 Ark. 334; 48 Ark. 66; 1 S. W. 838; 28 S. W. 172.

2. In order to hold the defendant criminally liable, it was necessary that the indictment should allege whatever is in law essential to his punishment. 1 Bishop on Criminal Proc. § 70; *Id.* § 81, and authorities cited in note 1.

3. Notwithstanding a trial court's discretion in matters of continuance, the motion for continuance in this case should, in the light of the facts set up therein, and of the subsequent developments upon the trial, have been granted.

4. The court erred in permitting the State, after both sides had closed and after the jury had been instructed, to introduce the testimony of F. L. Main to prove that in September, 1909, he made certain deposits, and also in permitting him to testify that in February and March, 1909, he thought his account was "in the black." This testimony injected a new issue into the case, of which defendant had no knowledge, and for which he was given no time to prepare, an issue not raised by the allegations of the indictment.

*Hal. L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The demurrer was properly overruled. The indictment clearly charges the commission of a statutory (not common law) offense, with such certainty as to put the defendant upon notice of what he is expected to answer, and it is charged with such degree of certainty as to enable the court to pronounce judgment on conviction. An indictment, under our Code, will not be quashed except for some defect that affects the substantial rights of the defendant on the merits. Kirby's Dig., § § 2228-2229; *Id.* 2241-2243; 93 Ark. 406; 21 *Id.* 65; 22 *Id.* 81. The indictment is good, notwithstanding it does not allege that the Bank of Siloam was an Arkansas corporation. The statute reads: "Every officer, agent or clerk of any bank, *organized or doing* business under the laws of the State, etc." Kirby's Dig., § 1813. The use of the disjunctive "or" indicates that the Legislature intended the law to apply to any bank, whether organized under the laws of the State, or doing business under the laws of the State. It was not necessary to allege the domicile of the corporation, unless that fact was necessary to identify properly the offense. 48 Ark. 94; 94 Ark. 327.

2. The motion for continuance was addressed to the sound discretion of the court, and no abuse of that discretion is shown, 26 Ark. 323; 54 Ark. 243; 41 Ark. 153; 51 Ark. 167; 34 Ark. 720; 70 Ark. 521; 71 Ark. 62; 76 Ark. 290; 94 Ark. 539; *Id.* 169.

McCULLOCH, C. J. The grand jury of Benton County returned the following indictment (omitting caption) against the defendant, Fred A. Davey:

"The said Fred A. Davey, in the said county of Benton in the State of Arkansas, on the 4th day of August, 1910, being then and there the cashier of said 'Bank of Siloam,' said bank being a corporation, and doing a banking business in the city of Siloam Springs in said county, unlawfully, knowingly and feloniously did accept and receive on deposit in said 'Bank of Siloam,' a corporation as aforesaid, of and from F. L. Main, to his own personal account, the sum of $18 in gold, silver, and paper money, current money in the State of Arkansas, and circulating as money in the State of Arkansas, of the value of $18, the personal property of F. L. Main, said 'Bank of Siloam' being

then and there insolvent, the said Fred A. Davey being the cashier of said 'Bank of Siloam,' well knowing at the time he accepted and received said money on deposit that said 'Bank of Siloam' was insolvent, against the peace and dignity of the State of Arkansas."

The court overruled a demurrer to the indictment, and upon a plea of not guilty being entered the defendant was tried and convicted.

The indictment was preferred under the following statute: ·

"Section 1813. Every officer, agent or clerk of any bank organized or doing business under the law of the State, who wilfully and knowingly subscribes to or makes any false reports, or any false statements or entries in the books of such bank, or knowingly subscribes or exhibits any false writing or paper, with the intent to deceive any person or persons as to the condition of such bank, shall be punished by fine not exceeding one thousand dollars and imprisoned in the county jail not exceeding one year."

"Section 1814. No bank shall accept or receive on deposit, with · or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills or drafts, circulating as money, or currency, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to, or permit or connive at the receiving or accepting on deposit of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the State penitentiary not less than three years and not more than five years." Kirby's Digest, § § 1813 and 1814.

It is insisted by the appellant that the indictment is defective in failing to charge that the Bank of Siloam was "organized or doing business under the laws of the State of Arkansas." It does, in fact, charge that said bank was a corporation and was doing a banking business at Siloam Springs in this State. It is by no means certain that only corporations engaged in the banking business fall within the terms of the statute, for the second section refers broadly to *any* bank, which indicates that it is the business of banking at which the statute is aimed, regardless of

the form of control, whether through corporations or individuals or partnerships. But, as the indictment charges that this bank was a corporation, it is unnecessary to discuss that question. Certainly it is not material that the corporation should have been organized under the laws of this State, for those organized under the laws of other States are permitted to do business here under certain restrictions, and this applies to banking corporations as well as all others. It was sufficient, therefore, to allege that the bank was a corporation, and that it was doing business in this State. Nor was it necessary to allege that the Bank of Siloam was not a national bank. If the statute is inapplicable to national banks, that would be a matter of defense if the proof showed that it was a national bank.

The defendant filed a motion for continuance on account of the absence and illness of R. S. Morris, whose presence was desired as a witness. It was stated in the motion that Morris was president of the defunct bank, that he was "at all times during the existence of the bank the manager and director thereof; and that no other person can relate and explain its condition, affairs, dealings, holdings and transactions fully but him, and that no other person well understood the affairs of said bank except R. S. Morris," and if present said witness would testify that said bank was not insolvent prior to August 5, 1910. The court overruled this motion, and the defendant saved his exceptions. The evidence showed that the Bank of Siloam had been in existence about twenty-nine years, and that its business had been controlled by R. S. Morris during almost the entire period of its existence. The evidence tends to show that Morris had exclusive management of the business, and absolutely controlled it. The defendant had been assistant cashier, and was elected cashier in April, 1908. The insolvent condition of the bank was publicly discovered and a receiver appointed on August 6, 1910. J. D. Covey, who was appointed receiver on that day and took charge of the assets of the bank, testified that from an examination of the books and affairs of the bank he found that it was hopelessly insolvent and, in his opinion, had been so for at least three years prior to the date of his appointment. There was other testimony tending to show that the bank was insolvent, and that the defendant was aware of that condition for some time prior

thereto.    The State, in order to sustain the charge against the defendant, introduced as a witness F. L. Main, the party named in the indictment, who testified that on August 4, 1910, he deposited with the defendant as cashier of the bank $400.03, of which $80 was in currency.    Defendant introduced testimony tending to show that the bank was not insolvent prior to the receivership or at least that defendant was not aware of such condition. Defendant also proved that when Main made the deposit on August 4, 1910, his (Main's) account showed a debit—was "in the red" as witness termed it—to the amount of about a thousand dollars, and that the deposit went as a credit on the amount. After both sides rested the case, the court announced a ruling that a deposit made on a debit account in excess of the deposit would not constitute a violation of the statute.    The State was permitted, over objection of defendant, to prove that on September 24, 1909, F. L. Main deposited in said bank $167, and also $302.75 on September 21, which deposits were accepted by defendant.    Mr. Main could not in his testimony state whether his account was "in the red" then or not, but he stated that he made deposits in March, 1909, when his account was not "in the red."    Mr. Covey was recalled, and testified from the bank books that on September 21, 1909, when the deposit was made, Main's account showed a small credit.    Mr. Main was again recalled, and stated that he could not remember whether or not he had outstanding checks on the bank when the deposit was made in September, 1909.    It was clearly prejudicial to defendant to allow the State, after having elected to try the case on the deposits made by Mr. Main on August 4, 1910, only two days before the bank failure, and after failing to make out a case against the defendant, to start over again and introduce proof as to a deposit made nearly a year before that time, especially in the absence of a witness who, according to the statements of defendant's motion for continuance, knew more concerning the condition of the bank than any one else.    It is well settled that matters of continuance and of the order of introducing testimony rest largely in the sound discretion of trial courts, but we think this record shows an abuse of discretion in those particulars which calls for a reversal of the case.    If it can be said that the court, in the outset, did not abuse its discretion in refusing the continuance

on account of the absence of Morris, yet the conditions were materially changed by no act or conduct of defendant when the State changed its point of attack by seeking to prove a deposit nearly a year before the bank failure, and the testimony of the absent witness became incalculably more material in showing the condition of the bank at the more remote time when the other deposits were said to have been made. It is said that the defendant ought to have pleaded surprise and renewed his motion for a continuance. He objected to the testimony, which was sufficient to apprise the court of his contention, and it was useless to renew a motion which the court had already overruled. The defendant did all he could to avert the prejudicial situation in which he was placed, and we think that he should have a new trial to meet the charge made against him.

Questions are raised on other assignments of error, which we do not discuss, as they may not arise on another trial of the case.

Reversed and remanded.

HART, J., dissents.