## McElroy v. State.

### Opinion delivered October 9, 1911.

1. VENUE—PETITION FOR CHANGE OF—DISCRETION OF TRIAL COURT.— It does not appear that the trial court abused its discretion in denying a change of venue in a criminal case where the petition was based on the ground that the inhabitants of the county were so prejudiced that defendant could not secure an impartial trial therein, and was supported by four affiants, two of whom were nonresidents of the county, and of the other two one would not swear that defendant could not obtain a fair trial in the county, and the other did not know the state of mind of the inhabitants of the county toward defendant, except in one locality.   (Page 307.)

2. CONTINUANCE—WHEN IMPROPERLY DENIED.—It was reversible error to refuse the defendant a continuance for an absent witness, whose testimony was material to the defense, where defendant used proper diligence to secure his attendance and it appeared that the witness was within the court's jurisdiction.   (Page 307.)

3. HOMICIDE—THREATS OF DEFENDANT AS EVIDENCE.—When other facts and circumstances have been adduced in evidence in a murder case connecting the defendant with the commission of the crime, then threats made by him against the deceased prior to the homicide become linked in the chain of evidence showing his guilt, and it is immaterial that some of the threats were made at a time somewhat

remote from the homicide if they were continued until the day the killing was done. (Page 311.)

4. SAME—THREATS BY STRANGERS AS EVIDENCE.—Before threats against the deceased made by third persons can be introduced in evidence, facts and circumstances must be adduced connecting or tending to connect such persons with the crime itself. (Page 312.)

Appeal from Grant Circuit Court; W. H. Evans, Judge; reversed.

*Duffie & Duffie*, and *E. H. Vance, Jr.*, for appellant.

1. While the human voice is recognized as a means of identification, and is not regarded as opinion evidence, yet it is so recognized and regarded only when the recognition is immediate at the time of utterance. The voice *itself* must be recognized by the hearer. But where other extrinsic evidence becomes a factor in the conclusion as to the identity of the voice, it is then a mere conclusion of the witness, and as such inadmissible as opinion evidence. 96 S. W. 35; 1 Elliott on Ev. 790; 85 Ark. 64; *Id.* 300; Mrs. Spears's testimony as to the identity of the voice is manifestly a mere afterthought, a conclusion reached after deliberation, and based upon suspicion and what she had heard of alleged threats. It was necessarily prejudicial, the tendency of juries being to give too much rather than too little weight to testimony. 1 Moore on Facts, § 1. See 3 Greenleaf, § 30.

2. Evidence of threats made eighteen months prior to the time of the killing, without evidence of these threats continuing up to the time of the killing and of continued hostility between the parties, was inadmissible. 73 Ark. 152; 55 Ark. 604.

3. Where the manner of the killing and all the facts and circumstances developed in evidence show a case of murder in the first degree only, and the evidence does not suggest murder in the second degree, it is prejudicial error to charge the jury as to the lower degree of murder. 120 S. W. 897; 108 S. W. 365; 24 Mo. 475; 66 Mo. 148; 68 Mo. 315; 30 Pac. 905.

4. Where evidence of threats made by the accused against the life of the deceased has been admitted, it is prejudicial error to exclude testimony offered by the accused tending to show more recent and violent threats of the same character made by other parties against the deceased. 4 Elliott on Ev.

§ 2726; 58 S. W. 1020; 35 S. W. 175; 3 S. W. 325; 21 Am. & Eng. Enc. of L. (2 ed.) 224, 229.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant; for appellee.

1. It is well established that when a petition for change of venue is presented, the trial court may examine the supporting witnesses for the purpose of testing their credibility and the extent of the information upon which they base their affidavits; and, further, that when their testimony shows that they have reached their conclusion from hearing persons from only a few places or communities discuss the case, it is not error to overrule the motion for change of venue. 85 Ark. 518; 83 Ark. 336; 80 Ark. 360; 76 Ark. 276; 86 Ark. 357; 91 Ark. 65; 54 Ark. 243; 71 Ark. 180.

2. There was no abuse of discretion in overruling appellant's motion for continuance. No sufficient diligence was shown, nor did it appear that the witness could have been procured if the case had been continued. 41 Ark. 62; *Id.* 153; 40 Ark. 114; 26 Ark. 323; 54 Ark. 243; 51 Ark. 167; 62 Ark. 543; 34 Ark. 26; 76 Ark. 290; 70 Ark. 521; 71 Ark. 62. Moreover, where, as in this case, there is good ground for believing the motion is not made in good faith, but for delay merely, it is properly overruled. 1 Ky. Law Rep. 402; 17 Grat. 627; 71 Ark. 146; 26 Tex. App. 443. See, also, 82 Mo. 391; 44 S. W. 489; 23 Tex. App. 388; 30 *Id.* 64; 91 Ark. 567; 94 Ark. 538.

3. The testimony of Mrs. Spears, considered as a whole, establishes the fact that she was well acquainted with appellant's voice for five years previous to the killing, and that her recognition of the voice at the time of the killing was immediate at its utterance. The competency and materiality of this testimony is supported by the authorities cited by appellant. See also 1 Wigmore on Ev., § 660, and cases cited; *Id.,* § 571, and cases cited; 3 *Id.,* § 1977 and cases cited.

4. Evidence of threats made by appellant was properly admitted, and the fact that some of them had been made a year and a half previously did not detract from their admissibility, but only went to their weight as incriminating circumstances. Such threats however, the evidence shows, were continued down to the time of the killing.

Testimony of threats by third parties was properly excluded. "As a general rule, nothing else appearing, threats made by third persons against the person alleged to have been killed are inadmissible in a prosecution for the killing." Wharton on Homicide, § 604 and cases cited in note 1.

5. Appellant is in no position to complain of the instruction on murder in the second degree. A defendant is not prejudiced by instructions for a lower degree than that warranted by the evidence. Wharton on Homicide, § § 158, 160; 68 Ark. 310; 51 Ark. 157; 50 Ark. 506. Where a defendant is accused of murder in the first degree, and is convicted of murder in the second degree, the appellate court will not interfere with the verdict, even though it be the result of a compromise. Wharton on Homicide, § 142.

FRAUENTHAL, J. The defendant, Joe McElroy, was indicted for the crime of murder in the first degree, charged with killing Henry Spears, in Grant County, on January 28, 1911. He was convicted of murder in the second degree, and sentenced to imprisonment in the State penitentiary for a term of 21 years. From this judgment of conviction he has appealed to this court, and assigns a number of grounds why it should be reversed. The most important of these are that the court erred in refusing (1) to grant him a change of venue, (2) to grant him a continuance, and (3) in its rulings relative to the introduction of testimony. We do not think, under our view of the case, that it is necessary to note any other assignments of error that are pressed by him upon our attention.

The deceased, Henry Spears, lived at Fenter, a small station located on the line of railroad of the Chicago, Rock Island & Pacific Railway Company. He resided about 100 yards from the railroad track, and carried on a small mercantile business at his residence. On the night of January 28, 1911, he was called to the door of his home and there assassinated. He and his wife had retired for the night, and at about 9:30 o'clock some one came to the front porch and knocked on the post. It awakened Mr. Spears, and he answered the knock. The person on the outside said that "they wanted in the store." Mr. Spears's wife said to him it seemed that the person talking was changing his voice in order to disguise it and to "make them speak again." The knock was repeated, and again

Mr. Spears asked what they wanted. The person answered that "they wanted some tobacco." Mr. Spears then got up and lighted his lantern. As he went out of the door, he closed it behind him, and immediately he was shot down with a gun and instantly killed. The only persons at his residence besides the deceased were his wife and sister and their small children, who were all so frightened and startled by the awful deed that they could only scream for assistance. At that time a box car was standing on the railroad track about 100 yards from the residence, in which H. W. Harris, the foreman of a gang of railroad workmen, and these workmen were stationed for the night. In a few minutes after the shooting—probably 15 minutes—Mr. Harris went to the residence and rendered assistance to the wife, who was in an hysterical condition. She told him that some one had called her husband to the door and had shot him down, but named no one as the person who had done the deed. Mrs. Spears testified that from the brogue or tone of the voice calling her husband, she recognized it as that of a negro. She stated that she was familiar enough with the voice of the defendant to recognize it, and that she thought it was his voice that called her husband out. She was asked, "What was there about his voice that made you think it was Joe McElroy?" She answered, "The threats I had heard of Joe McElroy." Again she testified that "It sounded more like Joe's voice than any one else's around there." Being questioned further relative to the voice, she testified that she was familiar enough with the defendant's voice to be able to say it was his voice that she heard. She stated that she had told other persons on the following day that she recognized the voice or thought that the voice was that of defendant; but at the examination held by the coroner a few days after the homicide she did not state that she recognized the voice or that she thought it was the defendant's voice. At that time, however, she was in a weakened physical condition, and her mind was greatly affected thereby and by the crime. On the following day, a horse's track was discovered about 20 feet from Mr. Spears's gate, and a short distance away a mule track was also discovered. These tracks were in a road which passed by the residence of Mr. Spears, and they were followed for a distance of probably half a mile in the direction where the defend-

ant lived, but they were not followed on to the home of the defendant, who lived a distance of probably three-quarters of a mile from Mr. Spears's residence. It appears from the testimony on the part of the State that in August, 1909, the defendant and the deceased had a personal difficulty, for which both were arrested, the defendant being charged with assault with intent to kill. At the examining trial, the defendant was discharged. It was testified at the trial of the case at bar that the defendant had made certain threats against the deceased about that time. In 1910 defendant was indicted for the offense of assault and battery growing out of said difficulty with deceased, and it was testified further in the case at bar that he again made certain threats against the deceased in speaking concerning this indictment. A witness also testified that on the day of the homicide the defendant made threatening remarks about the deceased in a conversation had in which the deceased was mentioned. The State introduced Hensley Crossland as a witness, who testified that he was working for one Tom McElroy, who resided a short distance from the defendant; that on the night of the homicide he went to the home of one Fred McElroy, who lived near by, and remained there for a short time. He further testified that he was placed in the same jail with the defendant in connection with this crime; that while in the jail the defendant said to him that he wanted him to swear that the witness and Fred McElroy had gone to Mr. Spears's residence and that Fred had done the killing. He replied that he was not going to swear a lie about it, and that thereupon the defendant said he would pay him five dollars, but that he told him he would not do it. The defendant denied making such a statement to Crossland, but testified that he did have a conversation with him at the jail, and that Crossland had told him that he was with Fred McElroy at the time that Mr. Spears was killed, and that Fred shot him; that he had gone to Fred's home after supper, and with him had gone to the car where there was a woman whom Fred desired to see, and as he came by Tom McElroy's residence he stopped and got his gun, and that when they got to Mr. Spears's house Fred told him to wait, that he would go up and give Mr. Spears a scare, and that Fred fired the gun, and that they both ran back towards home.

There were other facts and circumstances adduced in evidence upon the trial of this cause, but the foregoing, briefly stated, are the most salient ones that were introduced towards proving or tending to prove the defendant's guilt of the commission of this crime.

The defendant filed a petition asking a change of venue from Grant County upon the ground that the inhabitants of that county were so prejudiced against him that he could not obtain a fair and impartial trial therein. This petition was supported by the affidavits of four persons. These persons were examined by the court relative to their knowledge of the state of the minds of the inhabitants of Grant County towards the defendant, in order to determine whether these affiants were credible persons. It appears from this examination that two of the affiants were not residents of Grant County. One of the remaining affiants stated that he would not swear that the inhabitants of Grant County were so prejudiced against the defendant that he could not obtain a fair and impartial trial therein. The examination of the remaining affiant disclosed that he did not know the state of the minds of the inhabitants of said county relative to the defendant except in one locality. Without detailing further the result of the examination of these supporting witnesses to this motion for a change of venue, we conclude, after carefully considering the same, that we cannot say that the trial court abused its discretion in denying the motion. *Price* v. *State*, 71 Ark. 180; *Kinslow* v. *State*, 85 Ark. 518; *Bryant* v. *State*, 95 Ark. 239; *Williams* v. *State, ante* p. 218.

Counsel for defendant earnestly insist that the court committed an error which was prejudicial to the rights of the defendant in refusing to grant him a continuance of the trial of the case. He moved the court to continue the trial of the cause on account of the absence of one Will Cutter, a material witness in his behalf. It was stated in the motion that Cutter would testify that he was near the railroad car on the night of the homicide, and that, immediately after the gunshot that killed Henry Spears, he saw Hensley Crossland passing, going up the railroad from the residence of Mr. Spears and running north toward Fenter Station, and at the time he saw Crossland he recognized him from the flash of the gun that was fired at the

time of the killing; that Cutter would testify that he was close enough to see the gun flash at the time of the killing and close enough to the scene of the homicide to recognize Crossland as he ran away; that he was well acquainted with Crossland, having worked with him on the section crew. The court overruled the motion for a continuance and, in doing so, the record discloses that he stated that, in his opinion, the motion set up a good cause for continuance, but that he believed that the witness could be procured before the trial was concluded, and that he would take chances upon getting the witness, and thereupon ordered the trial to proceed, against the earnest objection of the defendant.

We are of the opinion that the alleged testimony of this absent witness was very material to the defense in this case. The defendant denied that he fired the fatal shot. He testified that at the time of the homicide he was at his home and remained there during the entire night. He introduced members of his family, who corroborated his testimony in this particular. He stated that he did not know of the killing until the following day when the news of it had become rife. He testified that, after his difficulty with the deceased in 1909, they again became friendly, and that he had frequently traded with Spears and had engaged in long and friendly talks with him. He declared that no ill-feeling existed between them subsequent to August, 1909, and that he had never uttered an unkind word concerning him since that time.

At the trial of the case, the said Hensley Crossland, who was introduced as a witness for the State, testified that he was not present at the homicide and gave the damaging testimony against the defendant which we have above detailed. The effect of the testimony of this absent witness Cutter was to show that Crossland was actually present at the time of the homicide, and either fired the fatal shot, or was aiding the perpetrator of this dastardly crime. This testimony would tend to prove that the defendant was free of the guilt of this crime. Whether or not this testimony, if given, was true, is not for us to say. The credibility of this witness would be solely for the determination of the jury. But the defendant was entitled to have that testimony introduced before the jury so that they could pass upon its truth. The trial court thought that the motion

set up good cause for a continuance, and, upon careful consideration of it in connection with the facts and circumstances that were adduced in evidence upon the trial, we are of the same opinion.

In the trial of the case, H. W. Harris, the foreman of the work crew and a witness for the State, testified that Will Cutter was working for him at the time; that on the night of the homicide he (Harris) heard some one walk past the car just before the gun fired; and that as soon as it was fired he heard them run up to the car and say, "Cap, Cap; there's some one shot; get up," and that one of the persons who came back to the car was Will Cutter. So that it cannot be said that it was not probable that this absent witness Cutter was present at the time that the gun was fired and saw Crossland, as detailed in this motion. At the hearing of this motion for a continuance, Mr. Harris testified that Will Cutter was at that time at Banks, in Bradley County. This absent witness, therefore, was at a place on the night of the homicide where he could have seen the person who fired the fatal shot, and at the time of the trial his exact whereabouts within the jurisdiction of the court were known, so that his attendance could have been secured. We are of the opinion also that due diligence was used by the defendant to procure the attendance of this witness at the trial. The defendant was indicted for this crime during the February term, 1911, of the Grant Circuit Court, and the trial thereof began on April 25, 1911. On March 14, 1911, the attorneys for the defendant asked for the issuance of a subpoena for said Will Cutter, and at the time wrote to the clerk instructing him as to where he could be found, and also stated that he was one of the principal witnesses for the defense, and urged him to notify them if the subpoena was returned not served, in order that they might have another subpoena immediately issued for him. On April 8, 1911, these attorneys for the defendant ordered additional subpoenas for other witnesses in his behalf, and at the time requested the clerk to notify them if the subpoena for Will Cutter had been returned served. The clerk informed the attorneys for the defendant that the subpoena for Will Cutter had been issued and served upon him. The counsel for defendant, relying upon this, did not learn that such subpoena had not been issued for the

defendant until April 24, 1911. They then learned that the subpoena had been issued for Will Cutter on behalf of the State and had been served, and that, prior to that time, Cutter had been excused by the representatives of the State. Thereupon, counsel for the defendant had subpoena issued for Will Cutter on April 24, 1911, directed to the sheriff of Bradley County, being informed that said Cutter was working with a crew in Bradley County. These facts were brought by verified statements to the attention of the court, but the court stated that he thought the witness might be procured before the trial was concluded, and ordered the trial to proceed over the objection of the defendant. During the progress of the trial continued efforts were made by defendant to secure the attendance of this witness. His counsel had the sheriff of Grant County to telephone to the sheriff of Bradley County the place where said Cutter was working in addition to sending him the subpoena for him. The sheriff of said county misunderstood the place, and on that account failed to procure the witness. These facts were also brought to the attention of the court, and during the progress of the trial counsel for defendant had repeated calls made for this witness. Before the trial was begun defendant earnestly objected to the trial proceeding without the presence of this witness. During the progress of the trial his counsel by their repeated calls for the witness and by their conduct showed that they were continuously objecting to proceeding with the trial on account of the absence of this witness. But the court refused to continue or suspend the trial until the attendance of this witness was obtained, and to this action of the court exceptions were duly taken. The witness Cutter was not procured, and his presence was not secured at the trial.

We have repeatedly held that the trial court has great discretion in matters of continuance, which will not be controlled or disturbed on appeal when such discretion has been properly exercised, but such discretion is not without limit, and when it manifestly appears that it has been abused, it becomes the duty of this court to review the action of the trial court. Whenever it manifestly appears that the rights of the defendant will be sacrificed, or that there may result a failure of justice in refusing to grant to a defendant a con-

tinuance, then the trial court has exercised its discretion improperly by its action in overruling such motion for continuance. In this case the defendant had fully complied with the requirements of the law in his endeavor to procure the attendance of this witness. The testimony of this witness was very material to his defense, and we cannot say that he has had a fair and impartial trial without the right to have this material testimony detailed to the jury. We are of the opinion, therefore, that the court erred in refusing to grant the defendant a continuance in this case. *Jones* v. *State,* 99 Ark. 394; *Davey* v. *State,* 99 Ark. 547.

It is urged by counsel for the defendant that the court erred in permitting the introduction of testimony relative to certain threats alleged to have been made by the defendant, upon the ground that they were too remote in time. Testimony of threats made by a defendant against the deceased prior to the homicide are admitted for two purposes: They are admissible for the purpose of throwing light upon the defendant's motives and in proof of malice and premeditation on the part of the defendant; they are also admissible as a link in the chain of evidence connecting the defendant with the commission of the crime when there has been introduced other evidence showing the defendant's proximity to and opportunity for the commission thereof. When other facts and circumstances have been adduced in evidence connecting the defendant with the commission of the crime, then threats made by him against the deceased prior to the homicide become links in the chain of evidence showing his guilt.

In the case at bar, the testimony of the witness recognizing the voice which called her husband out in the night as that of the defendant was a statement of a conclusion reached through the sense of hearing, and not a mere matter of opinion. It was therefore admissible as direct and positive proof, the weight of which was for the jury's determination. There were other facts and circumstances adduced in evidence outside of these threats tending to connect the defendant with the commission of the crime. These threats were further admissible in this case for the reason that, though some of them were made at a time somewhat remote from the homicide, yet they were continued until the very day that the homicide was committed,

so that the threats adduced in evidence constituted a continuous link to the time of the homicide, and were therefore recent, and not remote.

Counsel for defendant urge that the court erred in refusing to allow him to introduce testimony showing that persons other than the defendant had made threats against the deceased prior to the commission of the homicide. But there was no evidence introduced upon the trial of this case showing who these other persons were, or connecting them in any way by other proof with the perpetration of the crime. As a general rule, in a case where the guilt of the defendant is shown by evidence which is largely circumstantial in its nature, any testimony tending to show that some other person may have committed the crime is admissible. But where nothing else appears connecting third persons with the commission of the crime, threats made by them against a deceased are inadmissible. Before such threats made by third persons can be introduced in evidence, facts and circumstances must be adduced connecting or tending to connect such persons with the crime itself. *Casat* v. *State,* 40 Ark. 511; *Phillips* v. *State,* 62 Ark. 119; Wharton on Homicide (2 ed.), 602; *Ogden* v. *State,* Tex. Cr. App., 58 S. W. 1018; 21 A. & E. Enc. Law, 229.

We are therefore of the opinion that the court did not err in its rulings relative to the introduction of testimony of threats made by the defendant or in its refusal of those made by third persons.

For the error committed by the court in overruling the defendant's motion for a continuance, the judgment herein is reversed, and this cause is remanded for new trial.