STATE of Arkansas *v.* Marshall Neal BULLOCK

CR 77-144                                   557 S.W. 2d 193

Opinion delivered November 7, 1977
(Division I)

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellant.

*Williams & Gardner,* for appellee.

ELSIJANE T. ROY, Justice. Appellee Marshall Neal Bullock was charged by information with sexual abuse in the first degree under Ark. Crim. Code § 41-1808 (1976). After entering a plea of not guilty at the preliminary hearing on

December 13, 1976, appellee was given a polygraph test on December 28, 1976. The State's motion in limine seeking to exclude the results of the test was denied by the trial court which held that the results of the polygraph test should be admitted into evidence.

The court's order stated *inter alia*:

That the polygraph test was taken on the representation by the Prosecuting Attorney's Office that if the Defendant would submit to the test the charges against him would possibly be dropped; that no written agreement was entered into between the parties but the Court finds that the Defendant submitted to the test believing that if it developed that he was truthful that the charges would be dropped and in doing so was misled into submitting to the said test and that the results thereof should now be admitted in the course of the trial as evidence in the case for whatever value that evidence may be.

The trial court also said:

* * * . . . I want the record to further reflect that I am not finding as a fact that the State promised the defense what they would allow if the defendant passed the test; nor am I finding that the defendant agreed to permit the introduction of it, had he flunked the exam. I think this is one of those instances where there was a lack of communication more than anything else, between counsel at the time. I don't want this to be precedent for any future cases that may arise, because this is a highly unusual and exceptional circumstance. * * *

Pursuant to Rules of Crim. Proc., Rule 36.10 (1976), the State brings this appeal from the interlocutory order of the trial court. The State alleges that the results of the test are inadmissible because the polygraph test has not achieved scientific acceptance as a reliable and accurate means of ascertaining truth or deception. It is also alleged that the absence of a stipulation between the parties regarding the use to be made of the test results further precludes admission.

Appellee contends the prosecuting attorney informed his defense counsel that if he (Bullock) would submit to a lie detector test and the results indicated he was not guilty, the charges against him would be dismissed. The State denies that any such agreement was reached. Both attorneys testified at the hearing on this issue:

> MR. WILLIAMS [Defense counsel]: * * * Mr. Shermer proposed to me that they had in the past given polygraph test to people in similar circumstances and if he came clear on the test, they would dismiss the charges against him. He proposed that Bullock take this test. * * *

> PROSECUTOR: * * * I did ask him [Mr. Williams] to tell him [appellee] that I would like to have the polygraph test to help me make that decision.[1] At no time did we ever discuss the — there were no stipulations made, no agreement was made. I did make a statement that at times the possibility existed that the charges might be dismissed. I didn't at any time tell him that the charges would be dismissed. * * *

In both *Lang* v. *State,* 258 Ark. 504, 527 S.W. 2d 900 (1975), and *Foots* v. *State,* 258 Ark. 507, 528 S.W. 2d 135 (1975), we held the trial court properly refused to admit the results of a lie detector test because the test was administered before the written stipulation was made.

McCormick on Evidence, § 207 (2d Ed. 1972) states the general rule traditionally holds that the results of a lie detector test showing opinion and supporting data are inadmissible when offered either as substantive evidence or as relating to the credibility of a witness. Several reasons have been advanced for the exclusion of polygraph evidence. According to McCormick, *supra,* "The exclusion seems to rest more upon a judicial estimate of the weight that the trier of fact will give to the opinion, and a demand that the opinion be almost infallible because the trier will think it so." (McCormick, *supra,* at p. 507). In other words, it has been suggested that "even with

---

[1]To help decide whether to file charges against appellee.

accurate tests and qualified operators, there is an inherent danger that the jury will rely too heavily on the results of the tests." Note, The Emergence of the Polygraph at Trial, 73 Colum. L. Rev. 1120, 1125 (1973).

One recognized exception to this general rule of exclusion is that the results may be used when the parties have entered into an "adequate stipulation to that effect." McCormick, *supra*, § 207. Arizona is among the jurisdictions which permit the results to be used under these circumstances. There the State Supreme Court in a well reasoned and exhaustive opinion, *State* v. *Valdez*, 91 Ariz. 274, 371 P. 2d 894 (1962), held that polygraph evidence and its relevant expert testimony were admissible in criminal cases upon stipulation subject to certain qualifications which were enunciated in the opinion. The first qualification listed stated:

> (1) That the county attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

In the instant case the prosecuting attorney approached appellee's counsel on October 8, 1976, stating he had serious questions about the case and he did not want to unjustly file any charges. He then requested that appellee take a polygraph test. On November 2, 1976, defense counsel informed the prosecutor of appellee's refusal to submit to the examination. Charges were filed against appellee the next day, November 3. Later, appellee agreed to take the test and it was administered on December 28, 1976.

It is undisputed that there was no written agreement as to the use to be made of the test results. The record discloses that not only was there dispute as to the terms of any oral agreement made by the parties but also whether any agreement was reached at all.

Appellee's defense attorney testified that he was never misled in any way by the prosecutor's statements regarding the use to be made of the test results. Rather, he stated that

his client (appellee) had been misled by the information he (the defense attorney) had passed on to him. Since appellee's counsel apparently understood the statements made by the prosecutor, he had a duty to fully explain them to his client and prevent the occurrence of any misunderstanding.

The trial court did not find any binding agreement was made by the parties that the results of the polygraph examination would be admissible. Accordingly the ruling that the results should be admissible is reversed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.