**Vernon S. KRIMMEL, Appellant,**

v.

**Frank X. HOPKINS, Warden, Nebraska State Penitentiary, Appellee.**

**No. 93–3534.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided Jan. 13, 1995.

Mandate Recalled, Opinion and Judgment Vacated Feb. 7, 1995.

---

Andrew D. Strotman, Lincoln, NE, argued, for appellant.

Donald A. Kotz, Lincoln, NE, argued, for appellee.

Before McMILLIAN and WOLLMAN, Circuit Judges, and NANGLE,* Senior District Judge.

McMILLIAN, Circuit Judge.

Vernon S. Krimmel appeals from a final judgment entered in the District Court[1] for the District of Nebraska, denying Krimmel's 28 U.S.C. § 2254 petition for a writ of habeas corpus. For the reasons discussed below, we affirm.

On November 5, 1982, the body of Louis Garland was discovered in his bathtub with multiple stab wounds in his neck and back. After learning that Krimmel had done odd jobs for Garland, police officers contacted Krimmel at his home on November 6, and Krimmel agreed to go to the police station for questioning. Police gave Krimmel *Miranda* warnings after Krimmel admitted that he had done some odd jobs for Garland. Police officers then misrepresented to Krimmel that they had found his fingerprints on the bathtub and had a witness who had seen him at Garland's house, and Krimmel admitted that he was in Garland's house the day before and found the dead body in the bathtub, but that he did not report the incident for fear of being implicated. When police officers asked Krimmel why he had killed Garland, Krimmel requested an attorney. A public defender arrived, spoke with Krimmel, and then told police officers Krimmel did not wish to talk to them further. Police officers then arrested Krimmel.

Krimmel asked police officers to retrieve his ulcer[2] medication from his mother. Police officers returned with the medication, but told Krimmel they would give him the medication after they talked with him further about the homicide "to clear up some new facts." Police officers gave Krimmel new *Miranda* warnings and reinitiated the interview. Krimmel then confessed to killing Garland in a fit of anger over Garland's homosexual advance. In a taped statement, he also told the officers that a meter reader had seen him at Garland's house and that his friend helped him hide his blood-stained clothing, Garland's wallet, and other physical evidence. The deputy county attorney arrived and took a second taped statement from Krimmel. Police obtained additional incriminating information from the friend Krimmel identified in his statement.

---

* The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

2. Although the trial transcript excerpts and police reports submitted in the record on appeal refer to Krimmel requesting his "ulcer" medication, Krimmel asserts he was taking Haldol, a schizophrenia suppressant.

At his state trial, Krimmel's counsel filed a motion to suppress only the first statement, which the state trial court denied. The prosecution did not introduce the second and third statements in its case-in-chief, but introduced the other evidence derived from the second and third statements, e.g., the testimony of the friend and meter reader, the blood-stained clothing, and Garland's wallet. Krimmel's counsel did not object to the admission of this evidence.

After the State's case-in-chief, the state trial court held a conference in chambers on Krimmel's decision to testify. Krimmel's counsel advised Krimmel to testify because he thought his testimony would give him a better chance of a reduced charge, but he told Krimmel the second and third statements would be admissible· on impeachment or rebuttal if he chose to testify. Krimmel took the stand and testified about his prior felony conviction and that he had lied in his statements to the police. The prosecutor cross-examined Krimmel on his inconsistent statements to police and then played the recorded statements to the jury on rebuttal. The jury convicted Krimmel of first-degree murder, and the state trial court sentenced him to life imprisonment.

On direct appeal, Krimmel argued only that there was insufficient evidence to convict him and that the state trial court erred in admitting certain photographs. The Nebraska Supreme Court affirmed his conviction and sentence. *State v. Krimmel*, 216 Neb. 825, 346 N.W.2d 396 (1984). Krimmel filed a pro se state post-conviction petition claiming he was unlawfully arrested, was illegally interrogated, and received ineffective assistance of trial and appellate counsel. The state court appointed counsel for Krimmel and conducted a hearing, at which Krimmel and his trial counsel testified. The state court denied post-conviction relief, and the Nebraska Supreme Court summarily affirmed.

Krimmel filed the instant habeas petition, claiming that all three statements he gave to police and the evidence derived therefrom were fruits of an unlawful arrest, in violation of the Fourth Amendment; that the statements were obtained in violation of his Fifth and Fourteenth Amendment rights because the first statement was involuntary and was obtained before *Miranda* warnings were administered, and the second and third statements were obtained after police unlawfully reinterrogated him in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); that his Fifth Amendment rights were violated when police withheld his anti-schizophrenia medication as a means to reinterrogate him; that he was denied his Sixth Amendment right to effective assistance of trial counsel when counsel failed to create an adequate record at the suppression hearing, failed to object to the introduction of evidence derived from the tainted statements, improperly advised him to testify, failed to present evidence of his psychological problems, and failed to properly investigate the crime; that he was denied effective assistance of appellate counsel when appellate counsel failed to assert all these claims on direct appeal and to ensure a complete suppression hearing transcript was included in the bill of exceptions to the Nebraska Supreme Court; and that he was denied effective assistance of post-conviction counsel. Without holding an evidentiary hearing, the magistrate judge recommended denying as procedurally barred the Fourth Amendment and related ineffective-assistance-of-counsel claims, and denying all the other claims on their merits. The district court, adopting the recommendations over Krimmel's objections, denied habeas relief. This appeal followed.

## I. Fourth Amendment Claims—Procedural bar

Krimmel conceded in the district court that the merits of his Fourth Amendment claim were barred under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). He argued in the district court and renews his argument on appeal, however, that he received ineffective assistance of counsel when his counsel failed to challenge, on Fourth Amendment grounds, the admissibility of all three statements and the physical evidence derived therefrom. The district court concluded Krimmel had procedurally defaulted this claim. Krimmel argues that

the general assertions of ineffective assistance of counsel that he raised in his post-conviction petition were sufficient to allow the state courts to consider the issue, but that, even if he had defaulted, he could demonstrate cause and prejudice to excuse the default. We disagree.

A federal court considers the merits of a habeas corpus petition only when the petitioner has " 'fairly presented' to the state courts the 'substance' of his [or her] federal habeas corpus claim." *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir.1989) (quoted cases omitted), *cert. denied*, 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). We require that the same factual arguments and legal theories be presented in both the state and federal claims. *Kenley v. Armontrout*, 937 F.2d 1298, 1302–03 (8th Cir.), *cert. denied*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). This means that the federal claim should not include "significant additional facts such that the claim was not fairly presented to the state court," although we will review closely related claims which contain at least an "arguable factual commonality." *Id.* (quoted cases omitted). *See also Maynard v. Lockhart*, 981 F.2d 981, 984 n. 1 (8th Cir.1992) (specific allegation of ineffective assistance of counsel must be presented to state court). Upon our review of the record, we conclude that Krimmel did not present in the state courts an ineffective assistance claim relating to counsel's failure to assert a Fourth Amendment challenge.

A federal claim which has not been presented to the state courts is procedurally barred in federal court unless the petitioner can show both adequate cause to excuse his or her failure to raise the claim in state court and actual prejudice resulting from the failure to address the merits. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Krimmel argues that he can demonstrate cause based on ineffectiveness of his post-conviction counsel. Krimmel argues that *Coleman v. Thompson*, 501 U.S. 722, 755–56, 111 S.Ct. 2546, 2567–68, 115 L.Ed.2d 640 (1991), reserved an exception to the general rule that there is no right to effective assistance of counsel in post-conviction proceedings, in cases where the post-conviction action is petitioner's first appeal as of right for that claim. This argument, however, is foreclosed by our decision in *Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir. 1992) (no right to post-conviction counsel even if post-conviction proceeding first available forum for claim).

Krimmel also asserts that the missing suppression hearing transcript in the trial bill of exceptions constituted an external impediment which prevented post-conviction counsel from discovering trial counsel's failure to raise the Fourth Amendment ineffective assistance claim. *See McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991) (cause requires a showing of some external impediment preventing counsel from constructing or raising a claim). We disagree. We do not believe that any error in transcribing the bill of exceptions constituted cause, because compliance was not impracticable based on " 'some interference by officials' " and because the factual or legal basis for the claim was nonetheless reasonably available. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (quoted case omitted). Accordingly, we agree with the district court that Krimmel's Fourth Amendment ineffective assistance claim is procedurally barred.

## II. Fifth Amendment Claims

Krimmel argues that his Fifth Amendment right against self-incrimination was violated by the admission of his second and third statements and of the physical and testimonial evidence derived therefrom, and that trial counsel was ineffective in mishandling the Fifth Amendment claims.

### A. Voluntariness

Krimmel first argues that all his statements to police were involuntary, and thus, the statements and any fruits derived therefrom were inadmissible for all purposes. *See New Jersey v. Portash*, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979). Krimmel points to police withholding his medication until he answered more questions, and to their deceptive or misleading interro-

gation techniques when they misrepresented that they found his fingerprints and that a fictitious witness existed. The district court noted that, although the state trial court had not made an explicit finding of voluntariness, it was apparent from the record that the state trial court had implicitly concluded Krimmel's statements were all voluntary. Even were we not to give the state trial court's implicit finding of voluntariness a presumption of correctness under 28 U.S.C. § 2254(d), we conclude Krimmel's statements to police were voluntary. The record shows that Krimmel requested ulcer medication, not a schizophrenia suppressant, and that the temporary delay in obtaining this medication did not affect his ability to give a voluntary statement. In addition, "[m]isrepresentations on the part of the government do not make a statement per se involuntary." *Flittie v. Solem*, 775 F.2d 933, 945 (8th Cir.1985) (en banc), *cert. denied*, 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986). We conclude, on the basis of the totality of the circumstances, that Krimmel's Fifth Amendment voluntariness claim is without merit. *See id.*

### B. Fifth Amendment—*Edwards v. Arizona* violation

■ We agree with Krimmel that the police's reinitiation of questioning after he requested an attorney constituted a Fifth Amendment violation under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (once counsel has been requested police may not reinitiate custodial interrogation until counsel has been made available to accused even if accused has been advised of his rights). *See Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990). The State, however, did not use Krimmel's second and third statements in its case-in-chief. Only after Krimmel took the stand and testified first about making these statements, did the State make use of the second and third statements for impeachment and rebuttal purposes. Under established Supreme Court precedent, this was a permissible use of the illegally obtained statements. *See Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) (no Fifth Amendment viola-

tion to use illegally obtained statements for impeachment purposes); *see also Michigan v. Harvey*, 494 U.S. 344, 350–53, 110 S.Ct. 1176, 1180–82, 108 L.Ed.2d 293 (1990) (same under Sixth Amendment); *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (extending *Edwards v. Arizona* to Sixth Amendment protections).

■ Krimmel argues that even if the State did not use his second and third statements during its case-in-chief, the State introduced witness testimony and physical evidence identified through these statements, and that, but for his "coerced" statements, police would not have discovered this evidence. Addressing a similar argument in *Michigan v. Tucker*, 417 U.S. 433, 449–51, 94 S.Ct. 2357, 2366–67, 41 L.Ed.2d 182 (1974), the Supreme Court held that the Fifth Amendment was not violated by the State's use of the identity of a witness obtained during an illegally obtained statement. Thus, we find no Fifth Amendment violation when the State introduced the physical evidence and the testimony of Krimmel's friend and the meter reader in its case-in-chief, even assuming this evidence would not have been discovered.

### III. Ineffective Assistance of Counsel

### A. Failure to object to second and third statements and to develop record at suppression hearing

■ Krimmel argues that trial counsel was ineffective for failing to object to the admission of the statements and to create an adequate record at the suppression hearing in support of his Fifth Amendment claims. Krimmel bears the burden of proving his counsel rendered unprofessional service and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice requires a showing that " 'there is a reasonable probability that, but for counsel['s] unprofessional errors, the result of the proceeding would have been different.' " *Whitmore v. Lockhart*, 8 F.3d 614, 616–17 (8th Cir.1993) (quoting *Strickland v. Washington*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068).

■ We agree with the district court that Krimmel has not demonstrated prejudice. By taking the stand and discussing during his direct examination his second and third statements to the police, Krimmel opened the door, allowing the State to introduce the statements into evidence. Thus, notwithstanding counsel's failure to object to the admission of the second and third statements and any inadequacy in developing the record at the suppression hearing, we do not believe there is a reasonable probability that the result would have been different. *See Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.

### B. Advising Krimmel to testify

■ Krimmel argues that his counsel's advice to testify bordered on the irrational and was not within the range of competence demanded of attorneys in criminal cases. *See Houston v. Lockhart,* 982 F.2d 1246, 1251 (8th Cir.1993) (en banc). The harm Krimmel suffered as a result of taking the stand is quite apparent. It allowed the jury to hear Krimmel's confessions in their entireties and the State to cross-examine Krimmel about his assertion that his statements were "lies." The record before us, however, demonstrates that Krimmel was advised of the advantages and disadvantages of testifying and that the decision to testify was his, not his counsel's. The Supreme Court has ruled strategic decisions "made after thorough investigation of law and facts ... are virtually unchallengeable," even if that decision later proves unwise. *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066; *see also Novak v. Purkett,* 4 F.3d 625, 628 (8th Cir.1993). We will not second-guess decisions made for strategic or tactical reasons, even if, when viewed retrospectively, they turn out to be wrong. *See Smith v. Jones,* 923 F.2d 588, 590 (8th Cir.1991). With significant physical and circumstantial evidence having been presented against Krimmel in the State's case-in-chief, counsel advised Krimmel that his testimony could assist in showing the jury that he was guilty only of a lesser included offense of first-degree murder. The decision to testify was clearly a strategic decision. Accordingly, we agree with the district court

that Krimmel has not proven his counsel was constitutionally ineffective.

Finally, having thoroughly reviewed the record, we conclude that Krimmel's other allegations of ineffective assistance of trial and appellate counsel are without merit.

Accordingly, we affirm the judgment of the district court.