Ann LANG *v.* STATE of Arkansas

CR 75-68                                    527 S.W. 2d 900

Opinion delivered September 15, 1975

*McArthur, Lofton & Wilson,* for appellant.

*Jim Guy·Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant was charged with first degree murder, the information asserting that she shot her husband on October 31, 1973. The jury found her guilty of second degree murder and fixed her punishment at imprisonment for 21 years. The three points for reversal all have to do with the admissibility of evidence.

First, the prosecution introduced as witnesses Raymond Jackson and his wife, who testified that in November or December, 1971, or January, 1972, Mrs. Lang asked Jackson if he knew anyone that she could hire to kill her husband. Mrs. Lang indicated that she would pay the person with insurance money of from $10,000 to $30,000. Defense counsel objected to the testimony on the ground that the statements were too remote, having been made almost two years before the homicide.

The testimony was properly admitted in evidence. Threats, although not communicated to the victim of the homicide, are admissible as tending to show ill will and motive. *Crowe v. State,* 178 Ark. 1121, 13 S.W. 2d 606 (1929). Remoteness in time is to be considered when the interval between former difficulties and the homicide is so great as to indicate that they had their origin in independent causes. *Billings v. State,* 52 Ark. 303, 12 S.W. 574 (1889). In *McElroy v. State,* 100 Ark. 301, 140 S.W. 8 (1911), we upheld the admissiblity of threats made about a year and a half before the homicide. Underhill points out, with regard to proof of marital difficulties, that the fact that such troubles cover a period of years and continue down to the death strengthens such evidence. Underhill, Criminal Evidence, § 645 (5th ed., 1957).

In the court below, the State, before calling the Jacksons as witnesses, had introduced Mrs. Lang's confession. There she said that she and her husband had had nothing but trouble since they were married in 1953. "The trouble started

nine months after we were married when Charles brought home gonorrhea and beat me up because I resented it. During our married life he has brought home gonorrhea on four occasions and each time fights would happen. During the past three or four years we have had no actual fights, but have argued constantly." In the light of those circumstances the incident related by the Jacksons was not so remote as to be without probative value. The weight of the evidence was of course for the jury to determine.

Secondly, the prosecutor expressed surprise when the Jacksons testified that the incident occurred as far back as late 1971 or early 1972. The court permitted the State to prove, for impeachment purposes, that the Jacksons had told an investigating officer, a few months after the homicide, that Mrs. Lang's statements to them had been made in the spring or summer of 1973.

The officer's testimony was not admissible. Such prior inconsistent statements are sometimes admissible for impeachment but never as substantive evidence of their truth. *Comer* v. *State*, 222 Ark. 156, 257 S.W. 2d 564 (1953). "For such evidence to be admissible, however, the witness to be impeached must have given substantive testimony damaging to the party who seeks to attack his credibility. It is settled that inconsistent prior statements cannot be used to impeach a witness who merely fails to give the positive testimony that the party expected from him." *Milum* v. *Clark,* 225 Ark. 1040, 287 S.W. 2d 460 (1956). That principle applies here. We cannot say that the error was not prejudicial, because it improperly suggested to the jury that the damaging statements might have been made only a few months before the homicide.

Thirdly, it is contended that the defense should have been allowed to introduce the results of a lie-detector test to which Mrs. Lang submitted. It is argued that the State and Mrs. Lang had stipulated that the test results would be admissible. The stipulation, however, plainly contemplated that the test would be made in the future, after the date of the stipulation. The test in question was made several weeks before the stipulation and consequently was not within the scope of the parties' agreement.

Reversed and remanded for a new trial.