Jack B. SHANKLE *v.* STATE of Arkansas

CR 91-229 827 S.W.2d 642

Supreme Court of Arkansas
Opinion delivered March 30, 1992

42

*Honey & Honey, P.A.*, by: *Charles L. Honey*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant raises six points for reversal of his convictions for first-degree murder and two counts of aggravated assault for which he was sentenced to a total of forty-two years imprisonment. None of his points have merit, so we affirm.

■■ Appellant first argues the evidence is insufficient to support his convictions, but we must hold this issue was not preserved below. As we have repeatedly held, in order to argue sufficiency of the evidence on appeal, the appellant must make a directed verdict motion at the end of the state's case and again at the end of trial. A.R.Cr.P. Rule 36.21(b). *Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992); *Andrews* v. *State*, 305 Ark. 262, 807 S.W.2d 917 (1991); *Starling* v. *State* 301 Ark. 603, 786 S.W.2d 114 (1990). Here, the record fails to reflect the appellant moved for a directed verdict at the end of the trial. Appellant suggests the court reporter may have in some manner omitted his motion. Even so, the appellant has a duty to provide a complete record from which this court can determine the asserted error. *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986). If the record failed to reflect what occurred below, appellant could have corrected and had the record modified under Ark. R. App. P. 6(e). Having failed to do so, we are unable to review his claim of insufficiency of evidence.

Although we do not determine appellant's directed verdict issue, it is still necessary to highlight the pertinent facts so we may address appellant's other arguments. To prove its case, the state showed that ill will existed between appellant and his nephew, Mikey Shankle. Apparently, Mikey was resentful towards appel-

lant because appellant tried on various occasions to discipline him. Some of these occasions resulted in an exchange of threats and display of violence. Linda Shankle, Mikey's mother, testified the appellant had threatened to kill Mikey about three months before his death. Another witness, Abigail Kettlewell, related that about two months prior to Mikey's death, she overheard appellant say, "if he could get away with it, he would kill [Mikey] in a minute." Linda Shankle and Richard Shankle, appellant's brother, also testified that, on the Sunday preceding Mikey's death, appellant threatened to kill Mikey.

On the night of his death, Mikey, his brother Matt, and Brad Reeves, a friend, left Matt's house at about 9:30 p.m., and were walking two to three feet off the pavement and on a grassy area in single file alongside Sharp Street. They were on their way to a friend's residence. Mikey was in the rear, and was wearing camouflage clothes. Matt said that Sharp Street crested on a hill behind them where the boys saw the reflection of a vehicle's lights coming their way. He said the hill was about twenty feet away, and from the time he saw the reflection of the lights, it was ten to fifteen seconds when the vehicle hit them. Matt further said that the vehicle had approached faster and faster and then drove onto the grassy area striking them. The boys had just walked past a street light. The state introduced photographs of tire tracks appearing two to three feet from the pavement and on the grassy area where the victims were hit. The damage to appellant'vehicle was near the middle of the vehicle's hood, tending to show the appellant and his vehicle were off the pavement when the boys were struck. Appellant was legally drunk when the incident occurred.

■ Appellant's second argument challenges the trial court's admitting Linda Shankle's and Abigail Kettlewell's testimony that appellant had threatened Mikey's life two to three months before his death. These threats, appellant suggest, were too remote in time to be relevant. This court has held that threats are admissible as tending to show ill will and motive. *Lang* v. *State*, 258 Ark. 504, 527 S.W.2d 900 (1975); *see also Starling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990). And while the court recognized in *Lang* that the remoteness in time is to be considered when the interval between the former difficulties and the homicide is so great as to indicate that they had their origin in

independent causes, it also pointed out that the court has upheld the admissibility of threats made about a year and one-half before the homicide. *Lang*, 258 Ark. at 505, 527 S.W.2d at 901; *see McElroy* v. *State*, 100 Ark. 301, 140 S.W. 8 (1911).

■ Here, appellant's threats were shown directed at Mikey, commencing three months, and continuing up to four days, before his death. These threats bore on appellant's motive and intent, and the trial court did not abuse its discretion in admitting them into evidence.

■ Appellant next challenges the trial court's admissibility of the photographs showing tire tracks leaving the pavement of the street into the grassy area where the victims were walking. He claims a proper foundation was not made showing the tracks were made by appellant's vehicle. However, after appellant's objection, the state's witness, Officer Robert Reeder, who investigated the scene of Mikey's death, said that the tire tracks were from appellant's vehicle "because of the location of where his vehicle came out from the grassy area." Reeder further described that he saw radiator fluid at the end of the skid marks made by appellant's vehicle, and observed that appellant's vehicle was leaking radiator fluid. Reeder finally related that appellant's truck was missing its right front lens cover, and the officers found a lens retainer and plastic cover close to the track marks. Based upon these facts, the trial court ruled the photographs of the tracks taken at the scene were admissible, and on review, we hold the court did not abuse its discretion. *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987). The weight of the evidence and the credibility of a witness are matters for the jury to resolve. *Stewart* v. *State*, 297 Ark. 429, 762 S.W.2d 794 (1989).

Appellant's fourth argument questions the trial court's allowing Officer Samuel White to testify that, when appellant was administered field sobriety tests at the scene of the incident, appellant became belligerent and cursed the officer. Appellant contends the prosecutor learned at least two days before trial as to how White would testify, and, under A.R.Cr.P. Rule 17.1 (subject to Rule 19.4), the state should have promptly disclosed the substance of any oral statements appellant had made to Officer White. He says he did not learn of White's testimony until the day of trial. Officer White testified as follows:

> After we got to the rear of the vehicle, [appellant] made the statement, "Why are you messing with me? I'm the one that dialed 911." All the while I was advising him of the field sobriety tests.

* * *

> No, I didn't see [appellant] traumatized. He was arrogant about everything. He was cursing, mostly directing everything at me. Actually, he was cussing my family heritage.

Appellant concedes that the officer's testimony was the same evidence as was contained in a video tape taken of appellant by the police prior to appellant's being administered a breathalyzer test. In other words, White's testimony was not a surprise since it was duplicative of what appeared on the tape. However, appellant argues, the trial court had previously excluded the tape from evidence and therefore White's testimony should likewise be excluded, especially since it had not been disclosed.

The record is unclear regarding why the court excluded the video tape, but the trial court specifically found at trial that statements made by the appellant immediately after the alleged crime were admissible. It further ruled either White's testimony would be admissible or the video tape would be allowed into evidence in place of White's testimony. In so ruling, the trial judge offered appellant a continuance to the following Monday, a three-day delay, in order to defend against the evidence. Appellant declined.

Although the trial was nearing its end when the trial court's ruling was made on this point, appellant fails to show how he had otherwise been prejudiced. Under A.R.Cr.P.Rule 19.2, the prosecutor had a continuing duty to disclose information previously requested by the appellant and such disclosure undoubtedly would have included the oral statements Officer White attributed to appellant. However, Rule 19.7(a) leaves the decision whether to exclude such material or testimony, which was not disclosed, to the sound discretion of the trial court. *Lear* v. *State*, 278 Ark. 70, 643 S.W.2d 550 (1982). That rule provides as follows:

> (a) If at any time during the course of the proceedings it is brought to the attention of the court that a party

has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances.

 Clearly, under Rule 19.7(a), the trial judge had the option of offering the appellant a continuance. Here, while appellant complains he was unaware of what Officer White might say, White's name as a state's witness was provided appellant prior to trial. In addition, and as previously mentioned, White's testimony was not new and of no real surprise to appellant. We would also note that appellant testified and actually acknowledged he had acted in an arrogant and belligerent manner. Under these circumstances, we are unable to hold the trial court abused its discretion in allowing White's testimony. Under this point, appellant also argues error ensued from Officer White's reference to appellant having cursed the officer by mentioning the officer's family heritage. However, the trial court sustained appellant's objection concerning such reference, and appellant never asked for a mistrial or other relief. Because appellant was given all the relief requested, he has no basis upon which to raise the issue on appeal. *Mitchell* v. *State*, 281 Ark. 112, 661 S.W.2d 390 (1983).

In his fifth point, appellant argues Officer White's testimony, regarding appellant's oral statements, was hearsay, and the trial court's ruling otherwise was error. Appellant, however, made no such hearsay objection below and therefore waives it on appeal. *Parette* v. *State*, 301 Ark. 607, 786 S.W.2d 817(1990); *see also Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827(1989).

Finally, appellant assigns as error the trial court's permitting the state to cross-examine appellant about a statement he made to his attorney while in custody. Although appellant knew he was being videotaped the entire time he was at the police station, he spoke to his attorney by telephone and exclaimed, "[M]y god damn dumb-ass nephew stepped in front of me with his buddy." After appellant testified repeatedly that he had been in shock after he hit Mikey, Matt and Brad, the prosecutor sought to question him using the foregoing statement. The state argued it

should be allowed to test appellant's credibility with the statement. The trial court agreed. The prosecutor asked appellant if he had made the statement, and appellant answered that he had.

Appellant's main argument here is that his statement was privileged under Ark. R. Evid. 502(b) as a confidential communication between himself, as client, and his lawyer. He concedes he was aware third parties were present when he made the statement and knew he was being taped. Nevertheless, he says he was handcuffed and in custody and such circumstances should not strip his client-attorney conversation of its confidentiality. Appellant's argument simply is unsupported by law.

The attorney-client privilege only applies to confidential communications, not to those uttered in public or intended for disclosure to others or in fact disclosed by the client to others. D. Louisell, C. Mueller, *Federal Evidence*, § 209 (1975). Professor Wigmore wrote on this subject as follows:

> One of the circumstances by which it is commonly apparent that the communication is not confidential is the *presence of a third person* who is not the agent of either client or attorney. Here, even if we might predicate a desire for confidence by the client, the policy of the privilege would still not protect him, because it goes no further than is necessary to secure the client's subjective freedom of consultation (§ 2291 supra).

8 J. Wigmore, *Wigmore on Evidence* § 2311, at 601-603 (1961).

In *United States* v. *Gann*, 732 F.2d 714 (9th Cir. 1984), the court considered Gann's argument that the sixth amendment barred the admission of a conversation he had with his attorney. There, Gann's residence was being searched by officers when Gann was on the telephone, talking with his attorney. A detective overheard the conversation. The court held that, because Gann knew, or should have known, that third parties were present, his attorney-client privilege claim must fail. The court further concluded that the burden of proving that the privilege applies is upon the party asserting it, and Gann failed to show that his conversation with his attorney was made in confidence. *See also State* v. *Vennard*, 159 Conn. 385, 270 A.2d 837 (1970), *cert. den.* 400 U.S. 1011 (1971) (where the defendant was at the police

station and his telephone conversation with an attorney was overheard by an officer, the court concluded there was no evidence that the defendant sought to ensure the confidentiality of the conversation).

As previously stated, appellant here was well aware of other parties listening to his conversation with his attorney. Yet, he made no request or effort to ensure his conversation would be secure from third party listeners. Thus, Officer White's testimony bearing on appellant's telephone conversation is unaffected by the attorney-client privilege.

For the reasons given above, we affirm appellant's convictions.