Dale MEADOWS *v.* STATE of Arkansas

CR 03-1175

191 S.W.3d 527

Supreme Court of Arkansas

Opinion delivered September 16, 2004

*Wright & Van Noy, P.A.*, by: *Herbert T. Wright, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. This is an appeal from the judgment of conviction and sentence of appellant Dale Meadows for the crimes of capital murder and arson.[1] Meadows makes the following arguments on appeal: (1) the evidence was insufficient to support his convictions of capital murder and arson, because the testimony of state witness Thomas Conner was inherently improbable and unbelievable and should have been disregarded, and

---

[1] Meadows was specifically charged with capital felony murder under Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1997), with arson as the underlying felony, and with arson under Ark. Code Ann. § 5-38-301 (Repl. 1997).

(2) the circuit court erred in sentencing him for both arson and capital murder, because arson was the underlying felony of the capital-murder conviction. We affirm.

On November 7, 2001, at about 8:30 p.m., Tracy Meadows, wife of appellant Meadows, and Diane Sprague, who lived about five miles from Meadows's trailer home, drove to Harrison to visit Diane's family and to buy Tracy groceries. Diane testified that Tracy left Harrison about fifteen minutes before she did. When Diane arrived home at around 10:30 p.m., she found Tracy and Meadows in her home. Meadows asked Diane for a change of pants, because he had soiled his blue jeans. He told Diane that he had tried to get his live-in girlfriend, Lorraine "Lori" Pattison, out of his trailer home but that the trailer home had exploded and Lori had died. Diane testified that Meadows was very upset but that he did not look like he had been in a fire, because he did not have any burns or singed hair. In addition, he did not act like he was hurt. Meadows and Tracy left Diane's home when Diane requested that they do so.

At about 12:30 a.m., the morning of November 8, 2001, while returning from Branson, Missouri, Gay Lynn Easter drove by the trailer home owned by Bob Trigg and occupied by Meadows and Lori, which was two miles from her home in Green Forest. She noticed that the trailer home had "already collapsed, and it was just burning around the edges." She telephoned the Carroll County Sheriff's Department from her home to report the fire. Kim Marshall at the Sheriff's Department took the call from Gay and stated at trial that Meadows had failed to report the fire or to call for an ambulance while she was on her shift, which was from 11:45 p.m. on November 7, 2001, until 8:00 a.m. on November 8, 2001.

Gary Coleman, Captain of the Green Forest Volunteer Fire Department, was the first to arrive at the scene. He testified that no one was around the trailer home when he arrived and that it was very dark, because there were no street lights in the area. He also testified that the trailer home "was already burned down. Just pretty much [a] frame left was all." He added that no one had reported, and no one noticed at the fire scene whether there was a dead body in the trailer home.

At about 7:30 a.m. on November 8, 2001, Tracy and Meadows visited Patty and Tim Lively at their home in Yocum Creek. Patty testified that Meadows did not have any cuts on him

or singed hair or look like he had been in a fire. She also testified that Meadows told her that his trailer home had caught on fire, that Lori went into the trailer home to retrieve her dog, that he had tried to pull Lori out of the trailer home through the bedroom window but could not, and that she died.

Tracy then requested that Patty accompany her to look at the burned trailer home. After arriving at the fire scene, Tracy walked directly to the former bedroom of the trailer home where the body was located and touched it. Patty discouraged Tracy from touching the body and told her that she would help remove the body as a ruse to get her to leave the scene. Tracy and Patty returned to Patty's home, and Tracy and Meadows left together.

While Tracy and Patty were at the fire site, Tim Lively arrived home where Meadows was waiting. He testified that Meadows told him that Lori set the couch on fire and that his trailer home caught on fire as a result. Both Meadows and Lori escaped from the fire, he said, but Lori reentered the trailer home to retrieve her dog. When she could not escape again, Meadows said he ran to the back of the trailer and tried to pull Lori through a window. He told Lively that he was holding Lori's hands to pull her through the back window when the floor of the trailer home fell through and Meadows lost his grip on Lori's hands. Because of that, she died in the fire. Tim Lively testified that both Thomas Conner and Brice Sneed were present when Meadows told him this story.

After Tracy and Meadows left the Livelys' home, Patty testified that she stopped at her nearest neighbor's home, Brice Sneed, to tell him what had happened. At about 9:30 a.m., Sneed telephoned the Carroll County Sheriff's Department to advise that someone died in the fire of Meadows's trailer home. Investigator Alan Hoos of the Carroll County Sheriff's Department testified that after receiving Brice Sneed's phone call, he and Lieutenant Leighton Ballard visited the fire scene to search for any human remains. They discovered the remains of a human body and a dog and telephoned Carroll County Sheriff J.R. Ashlock and the Arkansas State Police. The Arkansas State Police requested Charles Rexford, a deputy sheriff from Washington County who specialized in arson investigation, to assist in the investigation. Bill Baskin, an arson investigator for the Arkansas State Police, also investigated the fire. ·

After Tracy and Meadows left the Livelys' home, they drove to Loretta Smith's home in Oak Grove. There, they asked to use

Smith's telephone and also asked for two trash bags and to borrow a shovel. Smith gave Tracy two large trash bags but refused to give her a shovel, because Smith was suspicious. Tracy and Meadows left.

On November 8, 2001, Meadows was arrested on outstanding warrants, and on November 12, 2002, a bench warrant was issued for Meadows's arrest for committing the crimes of capital murder and arson. On August 11, 2003, the State filed an amended criminal felony information, charging him with capital murder and arson. On August 13 and 14, 2003, Meadows was tried before a jury. Thomas Conner, who was imprisoned for his fourth DWI conviction, testified at the trial that he, Meadows, and Lori had been drinking all day at Meadows's trailer home. He further testified that Tracy entered the trailer home with a folding clasp knife in her hand and asked where Lori was. Tracy then walked into the bedroom where Lori was hiding, and Meadows told him that he expected there to be a fight. Conner heard Lori shouting from the bedroom like there was an emergency. Meadows went back to the bedroom, emerged with blood on him, and told Conner that Lori was dead and that he needed to leave. Conner testified that as he was leaving, he saw Meadows get some kerosene from the trailer home's porch and walk back into the trailer home.

The medical examiner, Dr. Steven Erickson, testified that Lori died of smoke inhalation. Due to the condition of the body, he was unable to determine if Lori suffered stab wounds. Meadows did not testify. At the conclusion of the trial, the jury unanimously found him guilty of arson and capital murder.

Following the verdict of guilty after the guilt phase of the trial, Meadows advised the circuit court that arson was an element of capital felony murder and "that it would be improper for him and violate the United States Constitution and the Arkansas Constitution, with respect to double jeopardy, for him to be sentenced for both of them." Meadows acknowledged there was a state statute, presumably Ark. Code Ann. § 5-1-110(d)(1)(A) (Repl. 1997), that permitted a sentence for both, but he argued that the statute was unconstitutional. The circuit court denied the motion. Meadows then waived jury sentencing, and the circuit court sentenced him to ten years for arson and life imprisonment without parole for capital murder.

Meadows first argues on appeal that the circuit court erred in admitting Thomas Conner's testimony, because reasonable minds could not differ that the testimony was improbable and unbeliev-

able because it contradicted expert testimony as to where the fire originated. Specifically, he contends that this testimony should be disregarded, because it directly conflicts with the testimony of arson experts Charles Rexford and Bill Baskin as to where the fire started.

Meadows, however, did not make this specific argument relating to the conflict between the testimony of the arson experts and Thomas Conner to the circuit court. At the conclusion of the State's case, his defense counsel made the following motion for directed verdict:

> Your Honor, we move for a directed verdict. I don't believe the State has presented any credible evidence so that the jury could find, without resorting to speculation or conjecture, that Dale Meadows lit the fire that caused the trailer to burn down and caused the death of Lori Pattison.

Later, defense counsel added: "Your honor, my basis for the motion for directed verdict on the capital murder would be the same. He did not start any fire, any arson, which led to her death." Defense counsel then rested without calling any witnesses and had this colloquy with the court:

> DEFENSE COUNSEL: Your Honor, if I may, at this time I would rest, for the record, and renew my previous motion for directed verdict. When the jury comes in, I'll rest again, for their benefit, but stand on my motion for directed verdict, at this time.
>
> THE COURT: Any new argument?
>
> DEFENSE COUNSEL: No, sir. Same argument.

The motion was denied.

Now, on appeal, Meadows offers as his cornerstone argument in support of insufficient evidence that Conner's testimony should be disregarded because it conflicted with the testimony of the arson experts. As already noted, this specific argument was not made to the circuit court as part of Meadows's motions for directed verdict. Thus, the matter is not preserved for our review.

Our directed-verdict rule is clear. *See* Ark. R. Crim. P. 33.1. That rule provides that motions for directed verdict "shall state the specific grounds therefor." Ark. R. Crim. P. 33.1(a). The rule further provides:

> A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(c).

■■ Our case law is settled that omitting to state specific grounds for a directed-verdict motion results in a failure to preserve those grounds for purposes of appeal. *See, e.g., Grady v. State*, 350 Ark. 160, 85 S.W.3d 531 (2002); *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). The policy behind the rule makes perfectly good sense. Appellate courts do not wish to entertain sufficiency-of-the-evidence issues that have not first been presented to the circuit courts for consideration and resolution. We, therefore, affirm on this point for failure to present the specific argument raised on appeal to the circuit court as part of Meadows's motions for directed verdict.

Meadows next argues that the circuit court erred in convicting him of arson, because it is an element of capital murder, and thus an included offense. Accordingly, he maintains that convicting him of the included offense as well as capital murder violates the double-conviction prohibition of the Fifth Amendment of the U.S. Constitution. In his post-trial motion for directed verdict, he referred generally to the capital felony murder statute, which specifically allows a separate conviction for the underlying offense, and made the conclusory statement that the statute is unconstitutional.

■ We will not address this argument, because it was not developed before this court by citation to authority or by persuasive argument. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). All Meadows did in his brief on appeal was state his legal conclusion in four sentences. That, without question, fails this court's test for proper development of an issue.

The record in this matter has been reviewed for other error in accordance with Supreme Court Rule 4-3(h), and no reversible error has been found.

Affirmed.