Terese Marie MEADOWS  *v.*  STATE of Arkansas

CR 04–331                                    199 S.W.3d 634

Supreme Court of Arkansas
Opinion delivered December 9, 2004

[Rehearing denied January 13, 2005.*]

---

* HANNAH, C.J., and CORBIN, J., would grant rehearing.

*Dudley & Compton,* by: *Cathleen V. Compton,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Terese Marie Meadows appeals from an order of the Carroll County Circuit Court convicting her of capital murder, arson, and tampering with evidence and sentencing her to a term of life imprisonment without parole, ten years' imprisonment, and three years' imprisonment, respectively, to be served concurrently. Meadows argues on appeal that (1) the circuit court erred in denying her motion for directed

verdict, because there was insufficient evidence to support her convictions for capital murder and arson; and (2) the circuit court erred in denying her motion for a mistrial, because the jury returned inconsistent verdicts regarding the offenses of capital murder and second-degree murder. Meadows's arguments are without merit, and we affirm.

The record reveals that on November 7, 2001, Lorraine "Lori" Pattison was in a trailer home in Carroll County that she had been sharing with Dale Meadows, Terese Meadows's estranged husband, when it caught fire and was destroyed. Dale Meadows was arrested and charged with capital murder and arson.[1] Investigators received information that Terese "Tracy" Meadows had gone to the scene of the fire and attempted to remove the victim's body. Meadows admitted that she had done this and stated that she did so in an attempt to protect her husband, Dale Meadows. She also told police that Dale Meadows had killed Lori Pattison.

Later, law enforcement received information that Tracy Meadows had also been involved in Lori Pattison's death. Tracy Meadows was subsequently arrested and charged with premeditated capital murder and in the alternative with capital-felony murder with arson as the underlying felony. Meadows was also charged with arson and tampering with physical evidence. A jury trial was held on August 5-7, 2003. Following presentation of the State's evidence, Meadows moved for a directed verdict on the charges of capital-felony murder and arson, which the court denied. Thereafter, Meadows presented her case and then renewed her directed-verdict motions, which the circuit court again denied.

The State requested that the circuit court instruct the jury on first-degree and second-degree murder as lesser-included offenses of capital murder. Meadows's counsel objected to these instructions, because she reasoned that "if [the jury is] going to find her guilty of any homicide, it would be of capital murder and not anything that they might compromise on." The court overruled Meadows's objection and instructed the jury on the offenses of premeditated capital murder, capital-felony murder, first-degree murder, second-degree murder, and tampering with evidence.

---

[1] Dale Meadows was convicted of capital murder and arson on August 14, 2003. This court affirmed his judgment of conviction. *See Meadows v. State*, 358 Ark. 396, 191 S.W.3d 527 (2004).

After administering the instructions, the judge and counsel engaged in the following conversation about an arson instruction:

> THE COURT: I did read two instructions that were not discussed in chambers. That is, the standard concluding instructions on findings, I added the instruction for arson and the instruction for tampering that were not presented to me. I just read it off of this one.[2]
>
> [DEFENSE COUNSEL]: That's fine, Your Honor.
>
> THE COURT: We'll prepare those and have them available to go into the jury room. Anything further to be placed on the record, at this point, [Prosecutor]?
>
> [PROSECUTOR]: Not that I'm aware of, Your Honor.
>
> THE COURT: [Defense Counsel]?
>
> [DEFENSE COUNSEL]: No, sir.

Defense Counsel made no objection pertaining to the arson instruction.

After closing arguments, the judge sent the jury into deliberations. After some deliberation, the jury sent a note to the judge asking the following questions:

> Are we supposed to decide?
>
> 1) Capitol [sic] Murder
>
> 2) Capitol [sic] Murder 1rst [sic] Degree
>
> 3) Capitol [sic] Murder 2nd Degree
>
> One, Two, or Decide between all 3?

The court reinstructed the jury on *all* the instructions, including the following:

> If you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of

---

[2] Though the circuit judge indicates that he read an arson instruction to the jury, no arson instruction is found in the record on appeal.

murder in the first degree. If you have a reasonable doubt of the defendant's guilt on the charge of murder in the first degree, you will consider the charge of murder in the second degree.

The jury returned verdicts finding Meadows guilty of capital murder, second-degree murder, arson, and tampering with physical evidence.

The prosecutor then stated to the court that sentencing Meadows to capital murder and second-degree murder was double jeopardy and suggested finding Meadows guilty of capital murder, the higher offense. Meadows's counsel stated she thought that "they've got inconsistent verdicts." The court polled each juror on whether his or her verdict was that Meadows was guilty of capital murder beyond a reasonable doubt. After all twelve jurors responded affirmatively, the court found that Meadows was guilty of capital murder. The court subsequently polled the jury on its findings of guilt for the offenses of arson and of tampering with evidence. Each juror again responded affirmatively for each verdict. The penalty phase of the trial commenced, and the court sent the jury to deliberate Meadows's sentences. It returned sentences for life imprisonment without parole for capital murder, ten years' imprisonment for arson, and three years' imprisonment for tampering with evidence.

After the sentencing phase was completed, Meadows's counsel moved for a declaration of a mistrial on account of inconsistent jury verdicts regarding the capital murder and second-degree murder convictions. The court postponed sentencing so that it could research the issue. On August 29, 2003, the court held a hearing on Meadows's sentencing after receiving briefs from the parties. At the conclusion of the hearing, the court denied Meadows's motion for a mistrial, disregarded the second-degree murder verdict, and sentenced Meadows to life imprisonment without parole. Subsequently, the circuit court entered its judgment of conviction and its order denying the motion for a mistrial.

## I. Motion for Directed Verdict

Meadows first argues on appeal that the circuit court erred in denying her motion for directed verdict, because the State failed to establish sufficient proof to support the jury's verdicts on the offenses of capital murder and arson. Specifically, Meadows argues that the evidence was insufficient, because the testimony was inherently improbable, physically impossible, and unbelievable. The State responds that sufficient evidence supports Meadows's

conviction for capital murder and arson. We agree with the State and hold that the circuit court did not err in denying Meadows's motion for directed verdict.

■■ A motion for directed verdict is a challenge to the sufficiency of the evidence. *See Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *See id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.* Moreover, the credibility of witnesses is an issue for the jury and not for this court. *Id.* The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Id.*

■■ Because Meadows failed to argue that the State had not presented sufficient evidence on the alternative charge of premeditated capital murder, she failed to preserve this argument.[3] *See* Ark. R. Crim. P. 33.1. Therefore, we will only address Meadows's arguments regarding capital-felony murder and arson. A person commits capital-felony murder with arson as the underlying felony if:

> (2) Acting alone or with one (1) or more other persons, he commits or attempts to commit arson, and in the course of and in furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person[.]

Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1997). Under capital-felony murder, the State must first prove the felony, so the felony becomes an element of the murder charge. *See Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). In this case, to prove that Meadows commit-

---

[3] Tracy Meadows's counsel specifically moved for directed verdict on "capital murder" and on arson, arguing that no evidence was presented to prove arson or to prove capital-felony murder. She then explained that she would not move for directed verdict on the tampering charge because Meadows admitted to such tampering. The State in its response discussed arson and premeditated capital murder.

ted capital-felony murder, the State was required to prove arson as the underlying felony. A person commits arson if he starts a fire or causes an explosion with the purpose of destroying or otherwise damaging:

(1)  An occupiable structure or motor vehicle that is the property of another person;  or

. . .

(3)  Any property, whether his own or that of another person, if the act thereby negligently creates a risk of death or serious physical injury to any person[.]

Ark. Code Ann. § 5-38-301(a)(1) & (3) (Repl. 1997).

Evidence presented at trial revealed that Meadows arrived at the trailer home of Diane Sprague in Green Forest on November 7, 2001, at approximately 4:30 p.m. Meadows subsequently left Sprague's home and returned between 8:00 and 8:30 p.m. to collect $20 that Sprague owed Meadows. To satisfy the debt, Sprague instead agreed to buy groceries for Meadows at the Wal-Mart in Harrison. Each took her own car, and the women met in the Wal-Mart parking lot. After purchasing groceries, the women went their separate ways. Sprague bought gas for her car and made a few telephone calls at a pay phone before driving back to Green Forest. When she returned home, Sprague found Tracy and Dale Meadows in her home. Dale Meadows told Sprague that his trailer home had exploded and that he tried but failed to remove Lori Pattison from the fire.

Around 12:30 a.m. on November 8, 2001, Gay Lynn Easter passed the trailer home owned by Bob Trigg and occupied by Dale Meadows and Lori Pattison. Easter testified that the trailer home had collapsed and was burning around the edges. She tried to notify Trigg but was unable to contact him. She then telephoned the Carroll County Sheriff's Department to report the fire. Kim Marshall, a dispatcher with the sheriff's department, took Easter's call. According to Marshall, no one reported the fire except for Easter during her shift, which was from 12:00 a.m. until 8:00 a.m. on November 8, 2001.

After being notified of the fire, Gary Coleman, Captain of the Green Forest Volunteer Fire Department, was the first to arrive at the scene. According to Coleman, no one was around the trailer home when he arrived and the structure was "already completely

burned down." Coleman testified that he attempted to see if there was anyone in the trailer home, but he could not see anything because it was too dark in the area.

Patty Lively testified that Tracy and Dale Meadows arrived at her home early in the morning of November 8, 2001. Lively testified that Tracy Meadows told her that Dale Meadows had killed Lori Pattison and asked Lively to go with her to the fire scene. When they arrived at the scene, Tracy Meadows walked directly to the area where Lori Pattison's body was located. She then told Lively that the body's remains were Lori Pattison's and then touched them, causing a piece of bone to break. Lively testified that she convinced Meadows to leave the area by promising her that she would later return and help her move the body. The women returned to Lively's home, and Tracy and Dale Meadows left. Lively then contacted her neighbor Brice Sneed and told him about going to the fire scene with Tracy Meadows and about Tracy Meadows touching the body. At about 9:30 a.m., Sneed contacted the Carroll County Sheriff's Department to inform them that Lori Pattison had died in the trailer home fire.

Investigator Alan Hoos with the Carroll County Sheriff's Department testified that he received Sneed's call. Investigator Hoos and Lieutenant Leighton Ballard visited the scene to search for any human remains, which they found near the remnants of a bed frame. The officers then contacted Arkansas State Police for assistance in the investigation.

According to Investigator Hoos, while at the fire scene, he noticed Tracy Meadows drive by in her vehicle. He conducted a traffic stop on Meadows and she was subsequently transported to the sheriff's department for an interview. According to Lieutenant Ballard, Meadows admitted that she found and touched the body but stated that Dale Meadows was responsible for whatever had happened. Tracy Spencer, an investigator with the Arkansas State Police who conducted Meadows's interview, also testified that Tracy Meadows stated that she had nothing to do with Lori Pattison's death or with the fire.

A forensic pathologist with the Arkansas State Crime Lab, Dr. Steven Erickson, testified that he examined the remains of Lori Pattison. Due to the condition of the remains, Dr. Erickson was unable to determine whether the victim had suffered stab wounds. But Dr. Erickson stated that she was alive at the time of the fire and died from smoke inhalation.

At the jury trial, Thomas Conner testified that he was in the trailer home with Dale Meadows and Lori Pattison on November 7, 2001, and that they had been drinking alcoholic beverages all day. According to Conner, Tracy Meadows arrived with a folding knife in her hand and asked where Lori Pattison was. Meadows then went into the bedroom where Lori Pattison was hiding from her. Shortly thereafter, Conner heard Lori Pattison scream for help. Dale Meadows next went into the bedroom. He later returned to the living room and stated that Tracy Meadows had killed Lori Pattison. Conner testified that Dale Meadows had blood on his forearms and on his blue jeans and told him to leave. As he was leaving, Conner saw Dale Meadows take a can of kerosene from the front porch and enter the trailer home with it. In addition, Earl Lee Sewell testified at trial that he overheard Tracy Meadows say that she killed Lori Pattison. Eddie Craig Monarch also testified that Tracy Meadows told him that she killed Lori Pattison, that Dale Meadows poured kerosene throughout the trailer home, and that he and Tracy Meadows lit it on fire.

■ Reviewing the presented evidence in the light most favorable to the State and considering only the evidence that supports that jury's verdict, there was substantial evidence presented to compel the jury's conclusion that Meadows was guilty of capital murder and of arson. The jury heard testimony that Meadows admitted killing Lori Pattison and that she was involved in starting the fire in the trailer home that eventually caused Lori Pattison's death. Meadows's arguments that the testimony was inherently improbable, physically impossible, and unbelievable are unpersuasive. It falls within the province of the jury to resolve questions of conflicting testimony and inconsistent evidence, and the jury chose in the instant case to believe the witnesses supporting the State's theory of the case rather than the defendant's. Meadows's argument regarding sufficiency of the evidence is without merit.

## II.  Mistrial Motion

For her second point, Meadows argues that the circuit court abused its discretion in denying her motion for a mistrial, because the jury returned inconsistent verdicts for capital murder and second-degree murder. Meadows also argues that the inconsistency was not cured by the court's reinstructing the jury or by its

polling the jury on the capital murder verdict alone, because the court should also have polled the jury on its verdict for second-degree murder.

We have said that a mistrial is an extreme remedy that should be used only when the error is beyond repair and cannot be corrected by any curative relief. *See, e.g., Ray v. State*, 342 Ark. 180, 27 S.W.3d 384 (2000). A circuit court's decision to grant or deny a mistrial will not be disturbed absent a showing of an abuse of discretion. *See id.*

As an initial matter, we question whether this point was preserved for appeal. After the jury's verdicts regarding capital murder and first-degree murder were first read, defense counsel said: "I think they've got inconsistent verdicts." Meadows contends that this was enough to preserve the issue, but this is all that was said. No express objection was made; nor did Meadows's counsel move for a mistrial. After the judge polled the jury on capital murder, he announced: "The Court finds that the defendant has been found guilty of capital murder." Meadows again made no objection to the capital-murder decision; nor did she move for a mistrial. Indeed, no motion for a mistrial was made on inconsistent verdicts until after the jury had returned its verdicts for sentencing after the penalty phase. Hence, the mistrial motion does not appear to have been made at first opportunity. *See Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000) (motion for mistrial procedurally barred when not made at first opportunity). Certainly stating defense counsel's mere *belief* that the verdicts were inconsistent is not enough.

But in addition to the preservation point, Meadows's arguments on appeal are without merit. *See Ferguson v. State, supra* (legitimacy of denying mistrial motion addressed, although motion appeared to be made late). She contends that the verdicts of capital murder and second-degree murder were inconsistent and should not be allowed to stand. This court has found "inconsistent" verdicts to be those verdicts with some logical impossibility or improbability implicit in the jury's findings. *See Ray v. State, supra.*

In the case at hand, any ostensible confusion on the jury's part evidenced by the completion of the verdict forms for both capital murder and second-degree murder was cured when the circuit judge polled the jurors individually on whether each juror had found that Meadows was guilty of capital murder beyond

a reasonable doubt. Each juror responded affirmatively that he or she had. The sentencing phase then followed the finding of guilt, and the jury sentenced Meadows to life in prison without parole.

Polling individual jurors on whether this was each juror's verdict is an entirely reasonable method for confirming a verdict. Indeed, this court recently affirmed a death sentence where each juror confirmed that that was his or her decision. *See Robbins v. State*, 356 Ark. 225, 149 S.W.3d 871 (2004). Furthermore, in a case with facts very analogous to those of the instant case, the Wyoming Supreme Court held that where the jury found the defendant guilty of both greater and lesser offenses, polling the jury on the greater offenses and sentencing the defendant accordingly was the appropriate way to proceed. *See Johnson v. State*, 695 P.2d 638 (Wyo. 1985).

In addition, polling the jurors on second-degree murder as well as capital murder was not required. The jury had already assured the circuit judge that each member had determined Meadows was guilty of capital murder beyond a reasonable doubt, which, of course, is a homicide two degrees higher than second-degree murder. Moreover, this court discussed Ark. Code Ann. § 5-1-110(b) (1987) (lesser-included offenses), in a case involving prosecution for more than one offense for the same conduct under Ark. Code Ann. § 5-1-110(a) (1987):

> ... We have repeatedly interpreted this statute to mean that a defendant may be prosecuted for more than one offense, but, under specified circumstances, a judgment of conviction may only be entered for one of the offenses. *Hickerson v. State*, 282 Ark. 217, 667 S.W.2d 654 (1984); *Swaite v. State*, 272 Ark. 128, 612 S.W.2d 307 (1981). Perhaps the best example of the way the statute is intended to work is in the case where a prosecutor is entitled to go to the jury and ask for conviction on the greater or the lesser offense, and the jury might find a defendant guilty of both the lesser included offense and the greater offense. Under the statute, the trial court should enter the judgment of conviction only for the greater conviction. The purpose of the statute in such a case is to allow a conviction of the lesser included offense when the accused is not convicted of the greater offense, but the trial court is clearly directed to allow prosecution on each charge.

*Hill v. State*, 314 Ark. 275, 282, 862 S.W.2d 836, 840 (1993). *See also Johnson v. State, supra.* The quoted language specifically discusses what

a circuit judge should do when a jury returns a verdict for a greater and lesser-included offense. It says the judge shall enter judgment for the greater offense, which is precisely what the circuit judge did here. Indeed, the circuit judge specifically referred to the *Hill* decision and relied on it before pronouncing sentence.[4]

 As a final point, we note an arson instruction was not included in the record, even though the circuit judge specifically announced, as quoted in this opinion, that he had instructed the jury on arson. Of course, it is the obligation of the appellant to present this court with a complete record for purposes of appeal. *See, e.g., Shankle v. State*, 309 Ark. 40, 827 S.W.2d 642 (1992); *Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992). We further observe that even if the arson instruction had not been given, the jury still was instructed, in the alternative, on capital murder committed with premeditated and deliberated purpose. The jury could well have convicted Meadows of premeditated capital murder since it was instructed on that offense, all of which would render the arson instruction irrelevant. We certainly find no reversible error in this regard.

 In short, the circuit judge entered judgment for the greater offense found by the jury after polling the jurors individually to be certain of their guilty verdict as an additional precaution. The jury subsequently returned a sentence in the penalty phase of life without parole, which relates to capital murder — not second-degree murder. We hold that the circuit judge did not abuse his discretion in denying the motion for a mistrial.

This record has been reviewed for any errors prejudicial to Meadows in accordance with Arkansas Supreme Court Rule 4-3(h), and we find there are none.

Affirmed.

CORBIN, THORNTON, and HANNAH, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I must respectfully dissent. I am both baffled and distressed by the conclusions

---

[4] As a final point in her inconsistency argument, Meadows presents this court with two sentences that state that her arson conviction should be dismissed, because no evidence was presented for support. We have already determined in this opinion that substantial evidence was presented to support a verdict that Meadows was guilty of arson.

reached by the majority in the instant case. I simply do not understand how the majority can determine that no error resulted from the jury finding Appellant guilty of both capital murder and second-degree murder for a single crime. Likewise, it is beyond my realm of comprehension as to how the majority can conclude that it was appropriate for the jury to convict Appellant of arson, and possibly, capital felony murder, in the complete absence of an arson instruction. Quite honestly, I am distressed by the trend I see emerging in this court to uphold criminal convictions, despite serious trial defects, as long as it appears that there is ample evidence pointing to a defendant's guilt. Justice is not being served, and dangerous precedents are being established with cases such as the present one.

I must first address the majority's erroneous conclusion that no error occurred when the trial court convicted Appellant of capital murder after the jury returned guilty verdicts on both capital murder and second-degree murder. In support of its conclusion, the majority avers that the trial court cured any possible irregularity when it polled the jury on the verdict of capital murder. This conclusion ignores two critical facts. First, there is absolutely no way of knowing whether the jury would have unanimously agreed that they had found Appellant guilty of second-degree murder if the court had also polled them on this verdict. Second, and more importantly, the note sent to the trial court during deliberations indicated that the jurors believed each of the murder charges to be varying types of "capital" murder. Thus, when the trial court polled the jury simply on "capital" murder, who knows if they even understood that each of the charges were not "capital" murder. It cannot be assumed, as the majority does, that the jury intended to impose the harshest conviction. In so doing, the majority ignores the fact that the jury found Appellant not guilty of the offense of first-degree murder. Unlike the majority, I do not believe that the trial court's action sufficiently clarified the inconsistent verdicts.

Furthermore, the majority's reliance on *Hill v. State*, 314 Ark. 275, 862 S.W.2d 836 (1993), is nothing more than a thinly veiled attempt to justify the erroneous result it reaches in this case. *Hill* is wholly inapplicable, as demonstrated by the lack of discussion of the case in the majority opinion. There, the defendant was charged with manufacturing or possessing with intent to manufacture or deliver a controlled substance and using or possessing with intent to use drug paraphernalia. He was convicted and sentenced for both offenses. On appeal, this court reversed both convictions

on the basis of an error in the admission of evidence. This court, in dicta, went on to examine other issues, including the defendant's contention that he could not be prosecuted and convicted of both charges because they constituted a continuing course of conduct. This court disagreed and discussed the fact that a defendant may be prosecuted for both a greater and a lesser-included offense and if found guilty of both could be sentenced for the greater offense. It is clear that the majority chooses to rely on this case in an attempt to confuse the real issue, namely that the jury did not understand the instructions given to them and, thus, returned inconsistent verdicts.

Equally misplaced is the majority's reliance on *Johnson v. State*, 695 P.2d 638 (Wyo. 1985). Again, this is a case that involved a defendant who was convicted of a greater offense after the jury returned guilty verdicts on both the greater and the lesser-included offenses. It has absolutely nothing to do with inconsistent verdicts. Because there is no Arkansas case precisely on point, it is understandable that the majority looks for guidance from other jurisdictions, but the guidance sought should be from cases where the issue is one of inconsistent verdicts. Such a case is *People v. Porter*, 659 N.E.2d 915 (Ill. 1995). There, a jury returned verdicts of guilty but mentally ill on two counts of first-degree murder, as well as verdicts of guilty but mentally ill on two counts of second-degree murder for a single offense. The trial court rejected the jury's findings on one of the counts of first-degree murder and both of the counts of second-degree murder and entered judgment on the remaining count of first-degree murder.

The defendant appealed to the Illinois Supreme Court, arguing that the jury verdicts were inconsistent and that it was improper for the trial court to disregard three of the convictions. The court agreed and ordered that the defendant was entitled to a new trial, stating that a single murder cannot be both provoked and unprovoked. In so ruling, the court noted that under Illinois law, second-degree murder is first-degree murder plus mitigation. In other words, first-degree murder is committed without any provocation, while second-degree murder results when the defendant is provoked in some manner. Otherwise, all the elements of first and second-degree murder are identical.

After determining that the verdicts were inconsistent, the Illinois Supreme Court then determined that the trial court erred in simply rejecting three of the verdicts. According to the court, the trial court should have provided additional jury instructions

that would resolve the inconsistency and then sent the jury back for further deliberations. In explaining this rule, the court stated:

> Under such circumstances, it is improper for a trial court to enter judgment on one or more of the verdicts and vacate the other verdicts. The rationale behind this rule is that a trial court may not usurp a jury's function to determine innocence or guilt by second-guessing which guilty verdict was intended by the jury and which was the result of some misconception.

*Id.* at 921 (citing *People v. Alamo*, 483 N.E.2d 203 (Ill. 1985)).

Just as in *Porter*, the trial court in the instant case second-guessed which verdict was intended, thereby usurping the jury's function of determining guilt. Yes, the trial court's poll of the jury resulted in an unanimous agreement that the jury intended a guilty verdict on the charge of capital murder. Again, I must reiterate, we have no way of knowing whether the jury would have also unanimously agreed that they had found Appellant guilty of second-degree murder. With regard to the verdict of capital murder, the jury determined that Appellant murdered Lori Pattison with premeditated and deliberated purpose or, alternatively, that she killed her in the course of committing the felony of arson. The jury also determined that Appellant committed second-degree murder by knowingly causing the death of Ms. Pattison under circumstances manifesting an extreme indifference to the value of human life. Despite these two findings, the jury found that Appellant did not purposely cause Ms. Pattison's death when it acquitted her on the charge of first-degree murder. When the jury returned these inconsistent verdicts, the trial court should have provided further instructions and ordered the jury to continue deliberations. There is certainly precedent for such action, as a similar situation was addressed by the trial court in *Barnum v. State*, 268 Ark. 141, 594 S.W.2d 229 (1980). There, this court affirmed the trial court's denial of a mistrial after the court clarified any ambiguity in the jury's verdicts by ordering them to continue deliberations until the verdicts were consistent. Because no such action was taken in this case, it is impossible to ascertain the jury's true intent.

Before leaving this point, I must note one final irregularity in the majority's logic. As another basis supporting its conclusion, the majority notes that the jury subsequently sentenced Appellant to life imprisonment without parole, a term consistent with capital

murder, not second-degree murder. This fact has no bearing whatsoever on the jury's intent. The death penalty was never sought in this case. Moreover, the record reflects that once the trial court determined that Appellant had been convicted of capital murder, it instructed the jury's foreperson to sign a form sentencing Appellant to life imprisonment, the only permissible sentence remaining for capital murder. In other words, the jury did not deliberate Appellant's sentence for the murder conviction.

Turning now to the issue of the missing arson instruction, I must point out that this court has usurped the jury's function of determining whether or not Appellant committed the felony of arson, as well as capital felony murder. It is clear from the record that the trial court never instructed the jury on the offense of arson, either as the underlying felony for capital murder or standing alone. In short, there is no instruction to the jury providing them with the elements that the State was required to prove in order to find Appellant guilty of arson. As the majority points out, the trial court *stated* that it added both an arson instruction, as well as an instruction for tampering with evidence. However, the record reflects that the jury instructions were read twice and, both times, the tampering instruction was given but the arson instruction was not read. It is highly improbable, as the majority implies, that the reading of the arson instruction was the only thing left out of the record, not once, but twice. A better conclusion is that it was not given.

In determining that there was sufficient evidence supporting the jury's determination that Appellant committed arson and capital felony murder, the majority is engaging in rank speculation. Without knowing the elements of the crimes, there is simply no way that the jury could have properly determined that Appellant committed those offenses. It is axiomatic that it is not for this court to weigh the evidence or assess the credibility of the witnesses, as that determination lies within the province of the trier of fact. *See, e.g., Jones v. State*, 355 Ark. 630, 144 S.W.3d 254 (2004); *Strom v. State*, 348 Ark. 610, 74 S.W.3d 233 (2002); *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). Yet, that is precisely what the majority is doing in this case. If it is acceptable for a jury to determine guilt without knowing the elements of the crime, then this court should do away with the Arkansas Criminal Jury Instructions.

I anticipate that the majority would conclude that this issue is not preserved for our review, as it was not raised in the trial court

or on appeal. Indeed, in *St. Clair v. State*, 301 Ark. 223, 783 S.W.2d 835 (1990), this court refused to consider for the first time on appeal an allegation that the trial court erred by refusing to give a particular instruction. *St. Clair*, however, is distinguishable from the instant case. The instruction at issue in that case involved the weight to be given to a hearsay statement. Moreover, this court refused to consider the argument because the trial court was not given the opportunity to correct the error. Here, the missing instruction sets forth the elements that the State is required to prove in order to obtain a conviction. In addition, the trial court stated on the record that he added the arson instruction, but for whatever reason, it was never read to the jury. Thus, the trial court had an opportunity to correct the error.

In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), the United States Supreme Court reversed a defendant's conviction for first-degree murder because the reasonable-doubt instruction given to the jury was constitutionally deficient. In so ruling, the Court pointed out that the right to trial by jury in criminal cases is a fundamental right. The Court further noted that the most important element of this right is to have the jury, rather than the judge, reach the requisite finding of guilt. *Id.* In further elaborating on this principle, the Court stated:

> What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements. This beyond-a-reasonable-doubt requirement, which was adhered to by virtually all common-law jurisdictions, applies in state as well as federal proceedings.

*Id.* at 277-78 (citations omitted).

Appellant in this case has been denied her right to a trial by jury as guaranteed her by the Sixth Amendment. It cannot be said that the State proved beyond a reasonable doubt all of the elements of arson and capital felony murder because the jury was never instructed on those elements and the State's burden in proving them. Instead, the majority has improperly assumed the role of factfinder and determined that there was sufficient evidence to support Appellant's convictions. In so doing, the majority has

violated both constitutional principles, as well as the dictates governing our role as an appellate court.

For the above-stated reasons, I respectfully dissent.

THORNTON and HANNAH, JJ., join in this dissent.